[Crim. No. 8524. In Bank. Dec. 23, 1965.]

In re GEORGE RAMIREZ ESTRADA on Habeas Corpus.

George Ramirez Estrada, in pro. per., and Robert N. Beechinor, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Robert R. Granucci and John F. Kraetzer, Deputy Attorneys General, for Respondents.

PETERS, J.— A criminal statute is amended after the prohibited act is committed, but before final judgment, by mitigating the punishment. What statute prevails as to the punishment—the one in effect when the act was committed or the amendatory act? That is the question presented by this petition. In *People* v. *Harmon,* 54 Cal.2d 9 [4 Cal. Rptr. 161, 351 P.2d 329], this court in a 4-to-3 decision held that the punishment in effect when the act was committed should prevail. We have determined to reconsider the holding in that case. Upon such reconsideration we have come to the conclusion that on this point that decision should be disapproved. We hold that in such situations the punishment provided by the amendatory act should be imposed.

 The problem arises in the instant case under the following circumstances. In October of 1962 petitioner was convicted of a violation of section 11721 of the Health and Safety Code (under the influence of narcotics, a misdemeanor.) The criminal proceedings were suspended and addiction proceedings under section 6450 of the Penal Code were instituted. In February of 1963 defendant was commit-

ted as an addict to the California Rehabilitation Center. In June of that year he escaped from the center, was captured and prosecuted for the escape. In October of 1963 he pleaded guilty to escape ''without force or violence,'' although the statute in effect when the escape was committed made no distinction as to punishment between escapes with and without force or violence. He was convicted of ''escape . . . without force or violence'' in violation of section 4530 of the Penal Code. The superior court, in November 1963, terminated the addiction proceeding, and the sheriff was ordered to return petitioner to the Department of Corrections to carry out the sentence previously imposed. The petition alleges that the Adult Authority is confining him because it feels bound by the provisions of section 3044 of the Penal Code providing for a two-year minimum from return to prison before parole may be granted in case of an escape conviction, whereas before finality of his judgment, the pertinent code sections were amended.

The sections involved are sections 4530 and 3044 of the Penal Code. In June of 1963, when petitioner escaped from the rehabilitation center, section 4530 provided that an escape or attempt to escape was punishable by at least a one-year period of imprisonment to commence from the time the prisoner would otherwise be discharged from prison. At that time, section 3044 of the Penal Code provided that no person convicted of an escape ''may be paroled until he has served at least two calendar years from and after the date of his return to the prison after such conviction.''

One month before petitioner's sentence and conviction, that is in September of 1963, but several months after the act of escape was committed, these two sections were amended so as to reduce the penalties formerly provided in those cases where, as here, the escape was without force or violence. By the amendments, section 4530 was divided into two subdivisions. Subdivision (a) provides that every prisoner who escapes or attempts to escape ''is punishable by imprisonment in a state prison for a term of not less than one year.'' Subdivision (b) provides that an escape or attempt to escape ''without force or violence, is punishable by imprisonment in the state prison for a term of not less than six months nor more than five years.''

Prior to September of 1963 section 3044 of the Penal Code provided, as already pointed out, that no prisoner found

guilty of an escape may be paroled unless he has served at least two calendar years from the date of his return to prison after the date of his conviction for the escape. In September of 1963 the section was amended to provide that persons convicted of a violation of section 4530, subdivision (a), of the Penal Code could not be paroled for two years, but the amended section said nothing about parole for persons convicted under subdivision (b) of the section, that is as to escapes ''without force or violence.''

As a result of these amendments, since September of 1963, it is conceded that persons convicted under subdivision (b) of section 4530 are eligible for parole in less than two years. In other words, by these amendments both the term of imprisonment and the time necessary to spend in prison to be eligible for parole have been reduced. It is alleged that petitioner is being held under the statutes as they read prior to September of 1963, but that he is entitled to the ameliorating benefits of the statutes as amended in that month. This contention is sound.

This case factually presents a stronger case for relief than did the *Harmon* case (*supra,* 54 Cal.2d 9). In *Harmon* the amendatory act lessening the punishment did not become effective until after Harmon was tried, convicted and sentenced. It became effective while the appeal was pending. In the instant case the amendatory act, although passed after the criminal act was committed, became effective before trial, conviction or sentence. But while this case thus presents a stronger case factually than did *Harmon* for applying the amendatory statute, legally the problem is the same. The key date is the date of final judgment. ■ If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies.

The problem, of course, is one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors.

There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication provided, that

the amendatory statute should prevail. ▇ When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. ▇ The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology. This same problem was presented to the Court of Appeals in New York in the case of *People* v. *Oliver* (1956) 1 N.Y.2d 152 [134 N.E.2d 197]. In that case, the court first held that the accused there should be punished under the new statute mitigating punishment (even though New York has a saving clause substantially similar to section 9608 of the Government Code, hereafter referred to) and concluded (at pp. 201-202 [134 N.E.2d]):

''This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution. (See Michael & Wechsler on Criminal Law and its Administration [1940], pp. 6-11; Note, 55 Col.L.Rev., pp. 1039, 1052.) A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative

design that the lighter penalty should be imposed in all cases that subsequently reach the courts." (See also *In re Smigelski* (1959) 30 N.J. 513 [154 A.2d 1].) These sentiments have generally been approved by legal writers. (Gerald H. Gottlieb in 34 So.Cal.L.Rev. 268, at p. 275; Gerhard O. W. Mueller in 36 N.Y.U.L. Rev. 110, at p. 117; J. Walter McKenna in 31 N.Y.U.L.Rev. 1378, at p. 1381.)

It is argued that this reasonable conclusion cannot be reached because of the provisions of section 3 of the Penal Code[1] and section 9608 of the Government Code.[2] These sections, it is contended, compel a holding that the Legislature intended the old law to apply. The argument is unsound.

First as to section 3 of the Penal Code. That section simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent. In the instant case there are, as will be pointed out, other factors that indicate the Legislature must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage. These factors also compel the conclusion that the saving clause of section 9608 does not compel or require a contrary interpretation.

To understand the purpose and effect of section 9608 some reference should be made to the general law applicable to the repeal or amendment of penal statutes imposing punishment.

It is the rule at common law and in this state that when the old law in effect when the act is committed is repealed,

---

[1]Section 3 of the Penal Code provides that no part of the Penal Code "is retroactive, unless expressly so declared."

[2]Section 9608 of the Government Code provides: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the . . . punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such . . . punishment is expressly declared by an applicable provision of law."

and there is no saving clause, all prosecutions not reduced to final judgment are barred. (*Spears* v. *County of Modoc*, 101 Cal. 303 [35 P. 869].)

It is equally well settled that if the old statute in existence when the crime is committed is thereafter amended so as to increase the punishment, and there is no saving clause, all prosecutions not reduced to final judgment are also barred. This is so because the accused cannot be punished under the new law since to do so would be ex post facto, and he cannot be punished under the old law because it has been repealed without a saving clause. (*Sekt* v. *Justice's Court*, 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833].) But this last mentioned rule is not applicable when there is a saving clause such as is found in section 9608 of the Government Code. Then the presumed intent of the Legislature to grant a legislative pardon is rebutted. The Legislature has stated that the accused shall be punished in spite of the repeal or amendment of the old law. It has not stated under what law the accused shall be punished, but, since the accused cannot be punished under the amendatory law that increases the punishment, he must be punishable under the old law because that is the only law under which he can constitutionally be punished, and the Legislature, by the saving clause, has expressed its intent that he be so punished. (*Sekt* v. *Justice's Court, supra.*)

The fact that the offender can be punished under the old law when the new law increases the punishment where there is an express or implied saving clause, certainly is not conclusive on the legislative intent where the new statute mitigates the punishment. If there is no saving clause he can and should be punished under the new law. (*Sekt* v. *Justice's Court, supra,* at p. 305.) In such a situation the rule of construction that statutes are normally to be interpreted to operate prospectively and not retroactively (a rule embodied in section 3 of the Penal Code) has been rebutted. The existence of a saving clause does not invalidate this conclusion. As already pointed out, if the saving clause expressly provided that the old law should continue to operate as to past acts, so far as punishment is concerned that would be the end of the matter. But that is not what the Legislature has done in section 9608. ▪ A reading of that section demonstrates that the Legislature, while it positively expressed its intent that an offender of a law that has been repealed or amended

should be punished, did not directly or indirectly indicate whether he should be punished under the old law or the new one. ▆▆▆ As has already been pointed out, where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed. Neither a saving clause such as section 9608 of the Government Code nor a construction statute such as section 3 of the Penal Code changes that rule. This is the rule followed by a majority of the states,[3] and by the United States Supreme Court. (*Calder* v. *Bull,* 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648].)

There are a series of appellate court opinions that hold to the contrary: *In re Crane,* 4 Cal.App.2d 265, 266-267 [41 P.2d 179] ; *People* v. *King,* 136 Cal.App. 717, 721 [29 P.2d 870] ; *People* v. *Williams,* 24 Cal.App. 646, 650 [142 P. 124] ; *People* v. *Davis,* 67 Cal.App. 210, 215 [227 P. 494] ; *People* v. *Pratt,* 67 Cal.App. 606, 608 [228 P. 47] ; *People* v. *Edwards,* 72 Cal.App. 102, 119 [236 P. 944] ; *People* v. *Lindsay,* 75 Cal.App. 115, 121 [242 P. 87] ; *People* v. *Fowler,* 175 Cal. App.2d 808, 812 [346 P.2d 792]. All of these cases are based on the erroneous reasoning that because the saving clause permits punishment under the old law when the statute is amended after conviction and pending appeal so as to *increase* the punishment, the same rule should be followed where the amendment *mitigates* the punishment. It is only by blind adherence to this concept that the cited cases can be sustained. All of these decisions are either based on this erroneous concept or simply cite each other. The holdings in these cases on this issue are disapproved.

▆▆▆ Thus petitioner is entitled to some relief on this issue. The extent of that relief will be later discussed.

▆▆▆ Petitioner raises another point which, if sound, would entitle him to immediate release. He urges that he was charged with escape from a narcotic rehabilitation center. It is contended that petitioner was not legally confined as an addict because he had not been served with an order fixing

---

[3]*People* v. *Oliver, supra,* 1 N.Y.2d 152 [134 N.E.2d 197]; *People* v. *Hayes,* 140 N.Y. 484 [35 N.E. 951, 952, 23 L.R.A. 830, 37 Am.St.Rep. 572]; *Commonwealth* v. *Wyman,* 66 Mass. (12 Cush.) 237, 239; *State* v. *Arlin,* 39 N.H. 179, 180; *Strong* v. *State* (Ind.) 1 Blackf. 193, 196; *McGuire* v. *State,* 76 Miss. 504 [25 So. 495, 497]; *McInturf* v. *State,* 20 Tex. Crim.App. 335, 352-353; *In re Petty,* 22 Kan. 477; *Hernandez* v. *State,* 43 Ariz. 424 [32 P.2d 18, 24-25]; see also 2 Story on Constitution (5th ed. 1891) § 1345, p. 221, and cases cited therein.

the time and place for the hearing on his addiction. This renders his commitment subject to collateral attack. (*In re Jones*, 61 Cal.2d 325 [38 Cal.Rptr. 509, 392 P.2d 269]; *In re Raner*, 59 Cal.2d 635 [30 Cal.Rptr. 814, 381 P.2d 638]; *In re Singh*, 234 Cal.App.2d 455 [44 Cal.Rptr. 474].) Petitioner argues that since the underlying commitment forming the basis of the confinement was improper, a charge of escape is not sustainable, citing *People* v. *Ah Teung*, 92 Cal. 421 [28 P. 577, 15 L.R.A. 190]; *People* v. *Clark*, 69 Cal.App. 520 [231 P. 590]. Those cases undoubtedly contain language that supports the position of petitioner, but later cases have explained that there are certain fundamental limitations on the application of that rule. ■ The proper and prevailing rule was stated in *People* v. *Scherbing*, 93 Cal.App.2d 736 [209 P.2d 796]. In that case it was contended that the statute under which defendant had been committed to the state prison was unconstitutional and that therefore he could not be guilty of a violation of section 4502 of the Penal Code making it a felony for prisoners in state prisons to possess certain weapons. It was there stated (p. 743) that appellant cites ''some cases relating to escape statutes. There are cases holding that one unlawfully confined who escapes from such confinement, where the confinement is without color of authority, does not violate a statute making it unlawful to 'escape' from prison. (*People* v. *Clark*, 69 Cal.App. 520 [231 P. 590]; *People* v. *Ah Teung*, 92 Cal. 421 [28 P. 577, 15 L.R.A. 190].) These cases, however, deal with situations where a person has been confined either without any authority at all or where the judgment was void on its face. But where the imprisonment is made under authority of law and the process is simply irregular in form, or the statute under which he is confined is unconstitutional, the escape is unlawful. . . . [Citing more than a dozen authorities.] These cases make sense. To allow prisoners to use force to escape and then to permit the defense that they were unlawfully confined, would create chaos in a prison. In a democracy the right of self-help is seldom permitted. Resort to the courts is the normal and traditional method of correcting an unlawful confinement.'' (See also *People* v. *Jones*, 163 Cal.App.2d 118, 121 [329 P.2d 37]; and *People* v. *Ganger*, 97 Cal.App.2d 11, 13 [217 P.2d 41].)

■ Obviously the instant case falls within this rule. The rule is sound. Normally, a prisoner should not be permitted to decide for himself whether or not he has been lawfully

confined. That is and should be a judicial question. Thus this point is without merit.

 Because it appears that petitioner is being held by the Adult Authority and being denied any consideration of parole under the wrong statute he is entitled to some relief.

There can be no doubt that habeas corpus is the proper remedy to correct such an error. While habeas corpus is a collateral attack on the judgment, and under section 1487, subdivision 1, of the Penal Code such attacks are limited to cases where the conviction and sentence are in excess of jurisdiction, it is well settled that the inability of a court to act except in a particular way is "jurisdictional" as that term is used in connection with the prerogative writs. (*Neal* v. *State of California,* 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839]; *Fortenbury* v. *Superior Court,* 16 Cal.2d 405, 407 [106 P.2d 411].) Under this theory the court in *In re Lee,* 177 Cal. 690 [171 P. 958], issued the writ when the defendant was erroneously sentenced to an indeterminate rather than a fixed term. The writ has also been used in various cases where the trial court has sentenced a defendant to a term in excess of the maximum provided by law. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 16; *In re McInturff,* 37 Cal.2d 876, 880 [236 P.2d 574]; *In re Morck,* 180 Cal. 384 [181 P. 657].) It will always issue to review an invalid sentence, when, without the redetermination of any facts, the judgment may be corrected to accord with the proper determination of the circumstances. (*In re McInturff, supra,* at p. 881; *Neal* v. *State of California, supra,* at p. 17.) In the *Neal* case it was held that habeas corpus is proper to review the issue as to whether the Adult Authority has misinterpreted subdivision 1 of Penal Code section 664, "and is therefore confining petitioner in excess of the time allowed by law." (*Neal* v. *State of California, supra,* 55 Cal.2d at p. 18.) Also in that case, on the same page, it is stated: "Even if the petitioner is not entitled to his immediate release, an alleged misinterpretation by the Adult Authority of the maximum sentence under which a prisoner is serving is reviewable by habeas corpus, since it would affect the Adult Authority's fixing of the prisoner's indefinite sentence and his eligibility for parole."

 The same problem is here presented. Petitioner is not improperly incarcerated. He is not entitled to his release, but he is entitled to proper consideration by the Adult Authority.

It is therefore ordered that the Adult Authority shall fix petitioner's sentence as provided in the amended statute and shall determine his eligibility for parole accordingly. But since petitioner is not now entitled to his release in the absence of action by the Adult Authority the writ should be denied. The order to show cause is discharged, and the writ of habeas corpus is denied.

Traynor, C. J., Tobriner, J., and Peek, J., concurred.

BURKE, J., Dissenting.—In *People* v. *Harmon,* 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329], this court held that when there is nothing to indicate a contrary intent it will be presumed that the Legislature intended a statute to operate prospectively and not retroactively. As to criminal statutes, this rule is codified in section 3 of the Penal Code, enacted in 1872, and unamended since that date. This section is but a restatement of a general rule of statutory construction. (*Von Schmidt* v. *Huntington* (1850) 1 Cal. 55, 65.) The principle of nonretroactivity is also clearly expressed, in section 9608 of the Government Code (see *ante,* p. 746), with respect to the punishment of an act presently committed in violation of a law subsequently terminated, unless the intention to bar such punishment is expressly declared by an applicable provision of the law.

The majority opinion overrules *Harmon* and a host of decisions of our appellate courts which have faithfully applied these basic rules of statutory construction and permits the ascertainment by a court of the legislative intent from a consideration of other relevant factors, where no intent as to retroactivity is expressed in the new law (*ante,* p. 744). The opinion concedes that had "the Legislature expressly stated which statute should apply [the old or new], its determination, either way, would have been legal and constitutional.[1] It has not done so."

The former rule for determining the legislative intent was based on the proposition that if the Legislature desired a statute to have retroactive effect it would have so stated. As was said by Mr. Justice Schauer in *Harmon* (54 Cal.2d at p. 22), "This view of the legislative intent is confirmed by the

---

[1] As noted in the majority opinion, there is one exception to this general rule, and that is that a new statute cannot be made to operate as an ex post facto law increasing a penalty, making an act a crime which was not previously a crime, imposing more burdensome rules of evidence, etc. (*Calder* v. *Bull,* 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648].)

fact that the Legislature, when it desires to make an ameliorating amendment retrospective in effect, knows how to do so and does so expressly.'' (Citing examples.)

It was further declared in *Harmon* (pp. 23-24): ''[W]e find no basis for implying an intention of the California Legislature that amendments ameliorating punishment should have retroactive operation in the face of the general saving clause. It is true that there is no express statement in such clause (Gov. Code, § 9608 . . . ) as to whether the offender should be punished under the old or the new law. But consideration of its history impels the conclusion that it was intended to save the old law as applicable to offenses committed before the effective date of the new law. As recounted in *Sekt* [*Sekt* v. *Justice's Court,* 26 Cal.2d 297, 300 (159 P.2d 17, 167 A.L.R. 833)], the predecessor of section 9608 of the Government Code was enacted in 1853 to repudiate the common-law rule of complete remission of prosecution by outright repeal of a penal law, and it was properly and consistently (beginning with *People* v. *Barbour* (1858) 9 Cal. 230, 231, 234) held to have that effect. Thereafter, when cases advancing the contention that a statutory mitigation of punishment effected a total remission arose in California, it was consistently, and in our opinion properly, held that the saving clause preserved the former punishment, when penal statutes were amended to mitigate punishment, so that such mitigation did not apply to those who had offended before the ameliorating amendment. That is, the Legislature was considered to have intended that such clause (which of course was expressly directed to the question of saving) should save all that was possible in the absence of contrary legislative expression directed to the specific new, mitigating statute. Now defendant would have us find a newly arisen, contrary legislative intent in an amendatory statute such as the one with which we are here concerned (the 1959 amendment of Pen. Code, § 4500 . . . ) although that amendment says nothing about the subject of saving. If the Legislature at some unspecified time between 1853 and 1959 acquired an intent to silently do all it could to mitigate punishment by an amendatory statute which says nothing as to whether such mitigation shall be prospective or retrospective, it could also have acquired a similar tacit purpose to remit all it could by a repealing statute. We cannot accede to the view that the Legislature has evidenced an intention that the long standing saving clause shall be or has become of less or of no effect.

"Rather, the amending (and amended) statute defining the crime and prescribing the punishment (Pen. Code, § 4500) and the general saving clause (Gov. Code, § 9608) are to be read together as one act."

The certainty of punishment has always been considered one of the strongest deterrents to crime. That certainty is best afforded when the punishment described by the law existent at the time of commission of the crime is promptly and inexorably meted out to those who violate the law. By changing the rules to make punishment uncertain the risk assumed by those contemplating committing a crime is substantially reduced. It is never enhanced since the ex post facto principles apply. Thus those contemplating and subsequently committing crime have all to gain and nothing to lose by seeking every avenue of delay through appeals and legal maneuvers of all kinds, for, who knows, the Legislature might in the meantime reduce the punishment. If in the meantime the Legislature reduces the punishment, even though it does not state any intention to make the new statute applicable retroactively, as long as such a beneficent act takes place before their judgments of conviction become final the decision in the case at bench will extend to them the benefits of the new statute ameliorating punishment.

But what of the defendant who pleads guilty to an offense? His conviction promptly becomes final, thereby effectively shutting the door to his ever receiving any benefit under the majority decision in this case. Unless the Legislature in any subsequent amendment of the law prescribing his punishment expressly states that it is its intention to ameliorate punishments theretofore meted out to previous violators of the law, there is no way in which he may benefit from the reduced penalty. As often as not, when compared with the person who pleads not guilty, the one pleading guilty may be the more deserving of the two.

Thus the majority opinion creates a situation which will result in what will certainly appear to those in prison, whose judgments have become final, as a gross inequity and as an unequal treatment under the law. It has the effect of encouraging appeals and delays not related to guilt or innocence but employed solely to keep open the possibility of subsequent windfalls effected by the combination of an ameliorating legislative act and the application of the opinion of the majority in this case.

Each of the arguments advanced by the majority supporting their decision is applicable with equal force to one whose judgment of conviction has become final but who is still serving a portion of his sentence. To extend the benefits of this new method of giving force to an undeclared legislative intent to one group of prisoners and not to another does nothing to earn respect for the law.

As was pointed out in *Harmon,* it is the responsibility of this court to uphold and enforce the law—exactly as enacted by the Legislature—and not to read into the law an intent not expressly stated therein, particularly when in order to do so we must override the rules expressly established by the Legislature that its laws are not to be given retroactive effect unless expressly so declared.

For these reasons I dissent.

McComb, J., and Schauer, J.,* concurred.

Respondent's petition for a rehearing was denied January 19, 1966. Mosk, J., did not participate therein. McComb, J., Burke, J., and Schauer, J.,* were of the opinion that the petition should be granted.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.