STATE OF NEBRASKA, APPELLEE, V. NICHOLAS R.
PEIFFER, APPELLANT.
326 N.W.2d 844

Filed November 24, 1982. No. 82-184.

Dennis R. Keefe, Lancaster County Public Defender, and Jerry Soucie, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

We now address the question reserved in our earlier opinion found *ante* p. 299, 322 N.W.2d 445 (1982), reexamine the rationale of that opinion, overrule same, and affirm the sentence imposed by the trial court.

At the time of our earlier opinion the issue reserved was thought to be only whether we were to permanently revoke defendant's driving privileges. It develops that the question is broader, namely, whether the penalty for third offense drunken driving, as amended by 1982 Neb. Laws, L.B. 568, should be applied in its entirety to the defendant, whose sentence under the repealed statute was on appeal on the date L.B. 568 became effective (July 17, 1982).

Prior to the enactment of L.B. 568 the maximum punishment was 5 years' imprisonment, a $10,000 fine, or both such imprisonment and fine, together with revocation of the offender's license to drive for a period of 1 year from and after the date of his discharge from prison. Neb. Rev. Stat. § 39-669.07 (Reissue 1978). As noted in our earlier opinion defendant was sentenced thereunder to imprisonment for not less than 1 nor more than 2 years, and his license was revoked for 1 year from and after such confinement. No fine was imposed. L.B. 568 provides for a

minimum of 3 and a maximum of 6 months' imprisonment. Further, the act imposes a $500 fine and requires that the offender's license be permanently revoked and that he be ordered never to drive again.

The essential question in this case is whether L.B. 568 was intended by the Legislature to mitigate the penalty for the offense of driving while intoxicated, third offense.

Viewed in the light of the maximum incarceration time, no serious question could exist that the penalty was reduced and thus mitigated, apparently calling into play the doctrine first enunciated by this court in *State v. Randolph,* 186 Neb. 297, 301-02, 183 N.W.2d 225, 228 (1971), *cert. denied* 403 U.S. 909, 91 S. Ct. 2217, 29 L. Ed. 2d 686, where we said: ''[W]e believe the better rule to be and we therefore hold that where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise.''

However, viewed in the light of the permanent suspension of driving privileges, the scene becomes cloudy. Whether viewed as a limited property right, or as a privilege, the fact is that the lifetime suspension is a terrible burden (albeit deserved) on the offender.

We note that a law providing an increase in penalty for a crime after judgment, if applied to an offense under the prior law, is generally considered void as an ex post facto law. A serious question exists whether the increase in the penalty of one of the consequences of a criminal act punishable by multiple consequences is thereby rendered non ex post facto by the reduction of one of the consequences.

The judicial doctrine announced in *Randolph, supra,* is bottomed on the premise that the Legislature

intended the new punishment, which it now feels fits the crime, to apply whenever constitutionally possible. *State v. Randolph, supra,* quoting with approval *In Re Estrada,* 63 Cal. 2d 740, 408 P.2d 948, 48 Cal. Rptr. 172 (1965); *People v. Oliver,* 1 N.Y.2d 152, 134 N.E.2d 197, 151 N.Y.S.2d 367 (1956); and *State v. Pardon,* 272 N.C. 72, 157 S.E.2d 698 (1967). See, also, *State v. Crisp,* 195 Neb. 833, 241 N.W.2d 129 (1976); *State v. Trowbridge,* 194 Neb. 582, 234 N.W.2d 598 (1975); *State v. Country,* 194 Neb. 570, 234 N.W.2d 593 (1975).

We have not in the past been called upon to discern legislative intent with respect to the retroactivity of a multipenalty punishment which offsets a reduced period of maximum incarceration against the permanent revocation of driving privileges and the imposition of a fine. We have, however, held that the *Randolph* doctrine does not apply where the new statute does something other than merely lessen the punishment, but instead repeals the old statute and defines new categories of crime. *State v. Crisp, supra.* In the instant matter a new class of misdemeanor was created and the old statute repealed.

We have found no specific statement of intent in the legislative history of L.B. 568, and none has been pointed out to us. On further reflection we find no valid basis upon which we can presume to know the Legislature's intent with regard to the retroactive application of the punishments contained in L.B. 568 for acts committed before its enactment to cases which are awaiting final judgment. Consequently, on further reflection, we must conclude that the *Randolph* doctrine does not apply to the case at hand, and our earlier opinion was, regrettably, erroneous in holding that it did. Our earlier opinion is therefore overruled. We thus avoid the larger question of whether persons whose appeal was pending at the time L.B. 568 was enacted may constitutional-

ly be subjected to lifetime suspension of driving privileges.

The sole error assigned by defendant is that he is entitled to have his sentence reduced to a maximum of 6 months under the authority of Neb. Rev. Stat. § 29-2204.01 (Reissue 1979). That statute provides: "In any criminal proceeding in which a sentence of confinement has been imposed and the particular law under which such sentence was pronounced is thereafter amended to decrease the maximum period of confinement which may be imposed, then any person sentenced under the former law shall be entitled to his discharge from custody when he has served the maximum period of confinement authorized by the new law, notwithstanding the fact that the court may have ordered a longer period of confinement under the authority of the former law."

On first appearance this statute seems to apply, mandating an order reducing the term of imprisonment to 6 months.

We note that not considered in this case, since the matter is on appeal and therefore not final, is the question of whether § 29-2204.01 intrudes on the powers granted to the Board of Parole by article IV, § 13, of the Constitution of Nebraska, so far as final judgments may be involved, or whether, absent an agreement to exercise our discretionary power to reduce sentences, the Legislature has any authority to order a reduction in penalties or a change in a final order of this court.

Limiting ourselves to the question before us, may it be fairly said that the Legislature intended the act to apply when incarceration time is decreased but a weighty and different additional consequence is provided? Nothing in the legislative history of the statute casts light on this determination, or of L.B. 568.

Previously, we have held that § 29-2204.01 did not apply unless the "particular law" under which the

defendant was sentenced was amended, *State v. Fuller,* 203 Neb. 233, 278 N.W.2d 756 (1979), or when only the minimum term has been decreased, but the maximum term remains the same, *State v. Rubek,* 189 Neb. 141, 201 N.W.2d 255 (1972).

In the absence of a clear expression of legislative intent, we are not inclined to interpret the statute to apply to matters other than clearly expressed within the statute itself.

No mandate based upon our earlier opinion has issued; therefore, the matter is before us in the same posture as if upon a motion for rehearing. Having concluded that neither the *Randolph* doctrine nor the provisions of § 29-2204.01 apply, the sentence of the trial court is correct and we hereby affirm it. Should defendant have been released from the custody of the Department of Correctional Services under the language of our earlier opinion, he is to be returned thereto forthwith to complete the sentence imposed by the trial court. He is entitled to no credit for such period of time as he may have been at liberty by virtue of his release pursuant to our earlier opinion. See *Philbrook v. Dunn,* 121 Neb. 421, 237 N.W. 391 (1931).

AFFIRMED.

CLINTON, J., participating on briefs.

McCOWN, J., concurring in the result.

No branch of government can increase a sentence, or any part of it, once the sentence has become final. Neither the Legislature nor this court can reduce a sentence, or any part of it, once the sentence has become final, because the power of clemency and the power to grant respites, reprieves, pardons, or commutation of sentence is vested solely in the Board of Pardons under the provisions of article IV, § 13, of the Nebraska Constitution. See, also, *Johnson & Cunningham v. Exon,* 199 Neb. 154, 256 N.W.2d 869 (1977).

Any attempt by the Legislature to reduce a sen-

tence which has become final is not only interference with the executive power but is also an interference with the power of the judiciary. It has long been settled that the Legislature is without power to invade the province of the judiciary by setting aside, modifying, or impairing a final judgment rendered by a court of competent jurisdiction. See *McCullough v. Virginia,* 172 U.S. 102, 19 S. Ct. 134, 43 L. Ed. 382 (1898), and a legion of other cases from every jurisdiction. In Nebraska, *City of Wayne v. Adams,* 156 Neb. 297, 56 N.W.2d 117 (1952).

Neb. Rev. Stat. § 29-2204.01 (Reissue 1979) provides: "In any criminal proceeding in which a sentence of confinement has been imposed and the particular law under which such sentence was pronounced is thereafter amended to decrease the maximum period of confinement which may be imposed, then any person sentenced under the former law shall be entitled to his discharge from custody when he has served the maximum period of confinement authorized by the new law, notwithstanding the fact that the court may have ordered a longer period of confinement under the authority of the former law."

Insofar as that section purports to apply to any sentence which has become final, the section is clearly an invasion of the powers of the executive and judicial branches of government and is unconstitutional.

In the case at bar the sentence reviewed on this appeal, and now affirmed by a majority of this court, was a lawful sentence in all respects at the time it was pronounced by the trial court. It had also been placed in execution.

The power to reduce that sentence, or any part of it, rests in the judicial discretion of this court until the sentence becomes final. In exercising that judicial power this court will attempt to ascertain the intent of the Legislature as to amendments relating to punishment, in accordance with *State v. Ran-*

*dolph,* 186 Neb. 297, 183 N.W.2d 225 (1971).

This court has no power to increase a sentence, or any part of it, but even if we had the power, a sentence could not be increased beyond the maximum allowed by law at the time of the commission of the crime. Any attempt by this court, or by the Legislature, to increase a sentence, or any part of it, by retroactive action of that sort would be clearly ex post facto.

CAPORALE, J., dissenting.

I respectfully dissent. In my view the *Randolph* doctrine is applicable; consequently, I would remand the cause to the Third Judicial District Court, Lancaster County, for resentencing in accordance with 1982 Neb. Laws, L.B. 568.

The majority is correct in pointing out that a constitutional issue must be resolved before such a determination can be made.

U.S. Const. art. I, § 10, cl. 1, provides that no state shall pass any ex post facto law. Neb. Const. art. I, § 16, also provides that no ex post facto law be passed. An ex post facto law includes one which applies to events occurring prior to enactment of the law and which disadvantages the offender affected by it. *Weaver v. Graham,* 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981); *Lindsey v. Washington,* 301 U.S. 397, 57 S. Ct. 797, 81 L. Ed. 1182 (1937); *Marion v. State,* 16 Neb. 349, 20 N.W. 289 (1884). See, also, *State v. Steemer,* 175 Neb. 342, 121 N.W.2d 813 (1963).

The question, therefore, becomes whether application of the sanctions imposed by L.B. 568 to the defendant-appellant would invoke the elements of ex post facto legislation. Since the application would relate to an event which occurred prior to the law's enactment, the element of retroactivity obviously would be present. The sole ex post facto issue then becomes whether such application would be to the defendant's disadvantage.

Defendant relies upon *State v. Holloway, ante*

p. 426, 322 N.W.2d 818 (1982); *Olson v. State,* 160 Neb. 604, 71 N.W.2d 124 (1955); and *Kroger v. State,* 158 Neb. 73, 62 N.W.2d 312 (1954), to argue that where parts of a sentence are divisible, each part is to be viewed separately. The cases cited by him do not so hold. *Holloway* held that a court may not peremptorily direct that a fine be satisfied by crediting pretrial jail time against it without granting defendant an opportunity to pay the fine in accordance with law. That holding has no bearing at all on the issue at hand. *Olson* ruled that where the complaint charged an offense which did not authorize license suspension as part of the punishment, it was error to order such; consequently, that portion of the sentence was stricken. *Kroger* held that license suspension was authorized by each offense therein charged, and affirmed revocation. It is true that both *Olson* and *Kroger* state that where a part of a sentence is illegal an appellate court may, if the sentence is divisible, modify it by striking out the illegal part. That only says that if a sentence is legal in part and illegal in part, we may affirm that which is legal and strike that which is illegal. Neither *Olson* nor *Kroger* answers the instant question of whether, in determining if a punishment has been impermissibly enhanced, we must compare each separate part of the present multiconsequence punishment to each similar part of the former multiconsequence punishment, or whether the in toto effect of the present punishment is to be compared to the in toto effect of the former punishment.

*Weaver v. Graham, supra,* declared unconstitutional a state statute reducing the amount of "gain time" which accrued merely by virtue of the avoidance of disciplinary violations. The fact that other provisions were enacted whereby a prisoner might earn extra gain time at the discretion of correctional authorities based upon the prisoner's behavior did not keep the new act from being more onerous than

the repealed act. Without so stating in exact language, it is obvious the U.S. Supreme Court compared the in toto effect of the repealed statute with the in toto effect of the new statute. The Court then concluded the prisoner was disadvantaged by loss of the opportunity to automatically accrue as much gain time under the new act as he could have by the same passive conduct under the repealed statute. This in toto comparison is clarified in Justice Rehnquist's concurrence. The requirement of an in toto comparison is also established in *Dobbert v. Florida,* 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977), *rehearing denied* 434 U.S. 882, 98 S. Ct. 246, 54 L. Ed. 2d 166. Under the statute pertinent at the time of the crime the death penalty was "presumed" unless the jury, in its unbridled discretion, made a recommendation of mercy. Under the statute in effect at the time of trial the jury rendered an advisory opinion following an evidentiary hearing on mitigating and aggravating circumstances, but the trial court made the final determination, which was then subject to review. The Supreme Court stated that the two statutory procedures must be compared in toto to determine if the new one might fairly be characterized as more onerous. The Court concluded that the new statute was, in fact, ameliorative and thus not ex post facto.

Although it is true that neither *Weaver* nor *Dobbert* applies the "in toto" concept to multiconsequence punishments, they do nonetheless establish the principle that for purposes of determining whether the constitutional prohibition against ex post facto laws has been violated, the proper method is to consider the total effect of the old punishment as compared to the total effect of the new punishment.

The new statute in this case trades off the possibility of a fine of up to $10,000 for a fine certain of $500. It trades off imprisonment of up to 5 years for

a period of no more than 6 months. In exchange for the fine in a sum certain and a reduced period of imprisonment, it trades off a 1-year license revocation for a lifetime revocation.

The in toto effect of L.B. 568 upon defendant would be to restore to him 18 months of liberty in exchange for the payment of $500 and the permanent loss of the privilege to drive. I find the in toto effect of L.B. 568 upon defendant to be less onerous than the sentence imposed under the former provisions of Neb. Rev. Stat. § 39-669.07 (Reissue 1978). Liberty is the most fundamental of human rights. It is guaranteed by the fifth and fourteenth amendments to the Constitution of our nation and by article I, § 3, of the Constitution of this sovereign state. In the course of human history blood has been shed to secure it. Indeed, it was our concern that defendant not be deprived of his liberty for a moment longer than the Legislature intended, which prompted us to consider this case in phases in the first instance. The license to operate a motor vehicle is, however, only a privilege granted with the understanding that such license may be revoked for cause by the state. *Durfee v. Ress,* 163 Neb. 768, 81 N.W.2d 148 (1957). I cannot conclude that the benefits of restoring 18 months of liberty do not substantially outweigh the detriment of having to part with $500 and of not being able to ever again personally drive himself about.

Nor is this a case such as presented in *State v. Crisp,* 195 Neb. 833, 241 N.W.2d 129 (1976), wherein we refused to apply the *Randolph* doctrine. In *Crisp* the former statutes dealing with rape had been repealed, new sexual assault offenses of various degrees created, and new penalties assigned to those new offenses. The situation presented here is one in which the designation of the offense was merely changed from a felony to a misdemeanor and the punishment modified.

Once it is determined the operation of L.B. 568 upon defendant is ameliorative, the applicability of the *Randolph* doctrine is inescapable because the intent of the Legislature may fairly be presumed to be that the punishment it now considers to fit the crime is to be applied retroactively to all constitutionally permissible cases. This is such a case.

KRIVOSHA, C.J., and BOSLAUGH, J., join in this dissent.