Filed 8/6/21  P. v. Crisp CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JASON BRIAN CRISP,<br><br>　　　Defendant and Appellant. | D077382<br><br><br>(Super. Ct. No. SCE387461) |


APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed as modified and remanded with directions.

Elisabeth Ritter Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Jason Brian Crisp was sentenced to prison after the trial court found he had violated probation.  Crisp contends:  (1) there was insufficient evidence to support the court's finding that he violated his probation by being

in possession of a firearm and ammunition (Pen. Code,[1] §§ 29800, subd. (a)(1), 30305, subd. (a)(l)); (2) the court applied the wrong legal standard in revoking his probation; and (3) his sentence on a prison prior enhancement should be stricken under Senate Bill No. 136. Consistent with the principles enunciated by the California Supreme Court in *People v. Esquivel* (2021) 11 Cal.5th 671, we conclude Crisp is entitled to the benefit of the changes to the criminal law that were enacted after his probation was originally imposed but before the finality of the revocation proceedings. Accordingly, we affirm the judgment as modified and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2019, a jury convicted Crisp of resisting an officer. (§ 148, subd. (a).) He pleaded guilty to a robbery count (§ 211), and admitted suffering a prison prior within the meaning of section 667.5, subdivision (b). In July 2019, the court sentenced him to six years in state prison as follows: the upper term of five years on the robbery conviction, plus one year on the section 667.5 enhancement. It suspended execution of the sentence and placed him on three years' probation.

In December 2019, at a joint preliminary hearing and probation revocation hearing,[2] the People presented the following evidence: On November 30, 2019, El Cajon Police Department officers performed a parole search on a four-bedroom home that Crisp shared with his girlfriend and six children. Crisp's girlfriend tried to dissuade the officers from searching a southeast bedroom, where an officer found a revolver-type handgun. It was

---

[1] Undesignated statutory references are to the Penal Code.

[2] We grant Crisp's motion to take judicial notice of the papers and transcript of the December 17, 2019 proceedings, and state the facts from the transcript of the proceedings.

in a bag, which was in plain view, hanging from the back of a closet door. The gun appeared to be missing a spring but was otherwise operable. It used .32-caliber ammunition. The gun lacked identifying marks like its make, model or serial number. Police found a package of cigarettes inside the master bedroom where Crisp and his girlfriend were staying. Inside a cupboard located in an adjacent bathroom, an officer found another package of the same cigarette brand, which contained four unexpended .32-caliber ammunition rounds. Police did not test the gun, the ammunition, or the cigarette package for DNA or fingerprints. Crisp told police that the gun and ammunition did not belong to him.

Crisp initially told police the southeast bedroom was unoccupied, but later said someone named K.T. or Anthony had stayed there the previous night. Crisp refused to reveal more details about Anthony, including his surname, unless the officer promised not to take Crisp to jail. When Crisp talked to a different police officer, he denied that someone named Anthony was staying in that room.

Crisp's girlfriend denied knowing anyone named K.T. or Anthony. She testified that the water was turned off in the bathroom where the ammunition was found, and therefore Crisp did not use it. She stated Crisp did not have access to the other bedrooms and never entered them because most of her children are girls. She said her 9-year old son and her ex-boyfriend (who had moved out approximately four months earlier) were the only ones who had stayed in the room where the gun was found. She denied knowing that there was a firearm or ammunition in the home, but allowed: "I know my child's father [Andres] owned one, but I didn't know he still had it due to it not working and being broke. I thought he had gotten rid of it." She added, "I'm pretty sure with his firearm, he had ammunition." She testified

3

that the police had conducted a probation search of her house approximately one month before the search at issue here.

Andres testified that he was last at the searched residence approximately four months before the hearing. He owned a firearm that "was broken" and did not work. While he was sure the gun was missing some parts, he was unable to identify which parts. He left the firearm at that house in a clear plastic bag and inside a box, which he stored on a top counter in a bedroom closet. He was unsure in which bedroom he had left his gun. When shown an image of the gun found in the probation search, Andres was unable to identify it as the one he had owned. The last time he remembered seeing his firearm was approximately two to three years earlier. He did not know its brand or caliber.

On rebuttal, a police officer testified that during the search of Crisp's home, they did not find the gun in a plastic bag, in a box, or on a shelf in the closet.

Defense counsel argued to the court that police found nothing illegal in the master bedroom where Crisp resided with his girlfriend; rather, they found the gun in a separate bedroom that Crisp did not enter, and which contained Andres's property. Counsel added that the People had failed to prove that Crisp ever owned, possessed or controlled the gun or ammunition.

The prosecutor argued Crisp had constructively possessed and controlled the gun and ammunition found, pointing out the firearm was located in the child's bedroom and in a bag that was in plain view. It was not located where Andres said he had left his gun. Further, the gun was operable. The ammunition that was in the box located in the bathroom matched the ammunition in Crisp's cigarette box in his bedroom, and the

4

ammunition fit the firearm. Finally, Andres could not identify the firearm found.

The trial court found sufficient evidence to hold Crisp over on both counts charged, and also found he violated probation by failing to remain law abiding; therefore, it revoked probation: "Based on all of the evidence presented and all reasonable inferences to be drawn therefrom, I do find probable cause to find that the offenses charged have been committed and that the defendant is guilty thereof. As to [the] probation case . . . I find probable cause to believe that the defendant has failed to remain law-abiding. I do formally revoke his probation on that case." The court reimposed the six-year sentence.

## DISCUSSION

### I. *Evidence Supporting Probation Revocation*

A trial court's decision to revoke probation lies within its broad discretion; it will not be disturbed on appeal absent an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443-445; see, e.g., *People v. Lippner* (1933) 219 Cal. 395, 400 ["only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation"].) Such abuse will only be found when the decision is arbitrary or capricious or not supported by the facts before the court. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378.) "And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant." (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

The trial court may revoke and terminate probation in the interests of justice if it has reason to believe the probationer committed another offense or otherwise violated the terms of his probation. (§ 1203.2, subd. (a); *People v. Monette* (1994) 25 Cal.App.4th 1572, 1575.) The facts supporting

5

revocation of probation need only be proved by a preponderance of the evidence. (*People v. Rodriguez, supra*, 51 Cal.3d at p. 447.) "[P]robation may be revoked despite the fact that the evidence of the probationer's guilt may be insufficient to convict him of [a] new offense." (*In re Coughlin* (1976) 16 Cal.3d 52, 56; accord, *People v. McGavock* (1999) 69 Cal.App.4th 332, 339 [section 1203.2 "authorizes revocation of probation based upon a criminal offense that cannot be prosecuted for lack of proof"].)

Under California law, a defendant has actual possession of a weapon when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.) Constructive possession can be established by circumstantial evidence and reasonable inferences drawn from the defendant's conduct. (*People v. Williams* (1971) 5 Cal.3d 211, 215.) The inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control (*ibid.*), including an appellant's residence. (See, e.g., *People v. Bagley* (1955) 133 Cal.App.2d 481, 484-485.)

A. *Analysis*

The court reasonably inferred from the circumstantial evidence that Crisp constructively possessed the firearm and ammunition. Specifically, the evidence showed that Crisp lived in the home with his girlfriend and her six children. A cigarette package found inside the master bedroom was the same brand as the package that contained the ammunition found inside the bathroom connected to the master bedroom. Further, the revolver, which used the same caliber of ammunition was found in a second bedroom that contained items typically associated with an adult male. Possession

"encompasses having a weapon in one's bedroom or *home* or another location under his or her control, even when the individual is not present at the location." (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951, italics added.)

Crisp made conflicting statements to the officers about who stayed in that bedroom, which the court could reasonably conclude displayed a consciousness of guilt. The court also could have found that the testimony suggesting that Andres was the gun owner was not credible because police found the gun in a different packaging and in a different place than where Andres claimed he had left his gun. Andres also failed to identify the gun found at the scene as the one he owned.

## II. *The Probation Revocation Ruling*

The People concede that in revoking Crisp's probation, the court stated the incorrect standard of "probable cause," which is the standard applicable to preliminary hearings. They point out that the court was ruling on two matters simultaneously: the instant probation violation case and a preliminary hearing for appellant's newest criminal case in case No. SCE396742, and the court likely misspoke. According to the People, given the strength of the evidence supporting his probation revocation, Crisp suffered no prejudice from the court's misstatement.

"Before a defendant's probation may be revoked, a preponderance of the evidence must support a probation violation." (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197; see also *People v. Rodriguez* (1990) 51 Cal.3d 437, 439-441 ["the facts supporting revocation of probation may be proven by a preponderance of the evidence"].) The term "preponderance of the evidence" means evidence that has more convincing force than the evidence opposed to it. (*People v. Mabini* (2001) 92 Cal.App.4th 654, 663.)

We agree the court stated an incorrect standard. Nonetheless, we conclude that if the court had stated the correct standard, it would not have changed the outcome, such that any error was harmless. (Accord, *Quintanar v. County of Riverside* (2014) 230 Cal.App.4th 1226, 1228, 1236 [reversing judgment granting writ of administrative mandate where the hearing officer's use of the wrong standard of review was an abuse of discretion but was not prejudicial because use of the correct standard "would not have changed the outcome"].) Under the correct preponderance of the evidence standard, the evidence, set forth in detail above, supported the claim that Crisp violated his probation by failing to remain law abiding.

### III. *Senate Bill No. 136*

Crisp contends that he was entitled to benefit from the ameliorative changes to section 667.5 under the *Estrada* rule of retroactivity, and that his case is not yet final for those purposes. (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*).) He claims the one-year enhancement imposed for his prison prior must therefore be vacated.

During the pendency of this appeal, the California Supreme Court, in a case presenting similar facts to those here, held that the case was "not final, for purposes of the *Estrada* presumption, because the 'criminal prosecution or proceeding' brought against defendant was not complete when the ameliorative legislation at issue took effect. [Citation.] Defendant had not exhausted direct review of the order causing his carceral punishment to take effect. The time for him to seek that review had not expired. And he had not successfully completed probation." (*People v. Esquivel, supra,* 11 Cal.5th at p. 678.) The same applies here; consequently, the enhancement for Crisp's prison prior must be stricken from his sentence.

8

We need not remand for resentencing in this case because Crisp already received the maximum amount of time for which he was eligible. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772-773 ["where, as here, an enhancement is erroneously imposed and the trial court has already imposed the maximum possible sentence, a remand for resentencing is unnecessary"].)

DISPOSITION

The judgment is modified to strike the one-year prior prison term enhancement imposed under former section 667.5, subdivision (b).  The superior court is directed to prepare an amended abstract of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

9