Filed 6/27/22 P. v. Marquez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077816 |
| v. | (Super. Ct. No. INF2000143) |
| SERGIO JUAN MARQUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Samuel Diaz, Jr., Judge. Affirmed in part, reversed in part, and remanded with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony Da Silva, Deputy Attorney General, for Plaintiff and Respondent.

INTRODUCTION

A jury found defendant and appellant Sergio Marquez guilty of first degree premediated attempted murder (Pen. Code,[1] §§ 664/187, subd. (a); count 1); discharging a firearm at an inhabited and occupied dwelling (§ 246; count 2); assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 3); corporal injury on a former spouse (§§ 273.5, subd. (a), 243, subd. (f)(10); count 4). The jury found true that defendant personally discharged a firearm proximately causing great bodily injury in the commission of counts 1 and 2 (§ 12022.53, subd. (d)); that defendant personally used a firearm in the commission of count 3 (§ 12022.5, subd. (a)); and that defendant caused great bodily injury in the commission of count 4 (§ 12022.7, subd. (a)). Defendant was sentenced to seven years to life on count 1, plus 25 years to life for the firearm enhancement attached to that count; midterm sentences were imposed, but stayed pursuant to section 654, on counts 2 through 4 and its attendant enhancements. Defendant was awarded appropriate custody credits and ordered to pay various fines and fees.

After defendant appealed from the judgment, appointed counsel filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, requesting this court to conduct an independent review of the record. Thereafter, defendant filed a personal supplemental letter brief. We subsequently

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

reviewed the record, vacated submission of the case, and directed the parties to brief the issue of whether we should reverse and remand the matter for a new sentencing hearing in light of Assembly Bill No. 518 (Assembly Bill 518) and other relevant sentencing laws that went into effect on January 1, 2022.

Assembly Bill 518 amended section 654 to give trial courts the authority to impose sentence for any offense, not just the greatest offense, when that section applies to preclude multiple punishment for crimes that were based upon a single act or omission. (2021-2022 Reg. Sess.)  In his letter brief, defendant argues the sentence should be reversed and the matter remanded for a new sentencing hearing in light of Assembly Bill 518.  The People agree.  Because the judgment in this case is not yet final, we agree with the parties that defendant is entitled to the benefit of Assembly Bill 518.  Therefore, we reverse defendant's sentence and remand the matter for a new sentencing hearing.  In all other respects, we affirm the judgment.

II.

FACTUAL BACKGROUND

For approximately three months in early 2019, defendant and Jane Doe were in a relationship.  During that time, defendant often stayed at Jane's apartment with her, and they slept in Jane's bedroom.  Jane's 13 year old daughter lived with her, and on occasion her daughter's cousin and her mother stayed with them.  Jane's bedroom had a sliding glass door that opened onto the patio, and her bed was two to three feet from the sliding glass door.

After a month into their relationship, defendant began to accuse Jane of cheating on him and seeing other people. In March 2019, Jane told him she wanted to end the relationship. Defendant did not take the break up well and began to stalk and harass Jane. He constantly called, texted, confronted, and watched Jane, to the point where Jane had to obtain a temporary restraining order against defendant. In April 2019, defendant sent Jane a text, stating that she'd "'better watch [her] ass.'" In May 2019, defendant texted Jane a photograph of a gun. In the end of May, he confronted Jane at her apartment around 10:00 p.m., questioning her about her alleged new relationship with another man. Jane told defendant to leave and that he was not welcome. Defendant left in a black Kia. Later that night, defendant repeatedly texted Jane, asking her who she had been talking to on FaceTime.

On the evening of June 7, 2019, Jane's daughter and her cousin were in the apartment with Jane when Jane awoke at 2:00 a.m. with pain in her leg. Jane's leg was bleeding heavily and the lights would not turn on. It was later discovered that defendant had tampered with Jane's electricity panel. Jane yelled to her daughter to call 911 and crawled to the living room. After paramedics and police arrived, Jane was taken to the hospital where she learned she had suffered a gunshot wound. The bullet had penetrated her artery and lodged in her bladder. The bullet eventually came out in her urine.

Officers discovered that Jane's bedroom's sliding glass door that led to the patio had been shattered and that the blinds of the sliding glass door had been damaged. A .45 caliber live round and a spent casing were found on the patio near the sliding glass door.

In August 2019, defendant's black Kia was repossessed, and during a search of the vehicle, the tow truck driver found a black subcompact, semiautomatic handgun inside the center console of the vehicle. The tow truck driver photographed the gun and informed the Palm Springs Police Department. Because they did not have any officers available to pick up the gun, the tow truck driver removed the gun's magazine, which was loaded, removed the round that was in the chamber and brought it in to the police station himself. After defendant was notified of his car being towed, he retrieved the property from the vehicle. When the tow truck driver informed defendant about the firearm in the vehicle and gave him a card the police had provided, defendant did not deny ownership of the gun and did not appear to be upset that it had been turned over to the police.

Following a lengthy investigation, officers suspected defendant of committing the crime and arrested him. Defendant had repeatedly told his new girlfriend that he wanted to hire someone to shoot Jane. On the night of the shooting, defendant was staying with his new girlfriend and left around 10:00 p.m. with a gun. Defendant returned very late, around 3:00 a.m. He appeared stressed and was pacing back and forth. Defendant asked his girlfriend to get her friends to drive to Jane's apartment and shoot her through the sliding glass door to her bedroom that faced the courtyard. Video surveillance from a

5

nearby hotel near Jane's apartment complex showed a black car similar to defendant's Kia driving away from Jane's apartment complex with the lights off at 2:15 a.m. The 911 call was placed at 2:11 a.m.

After defendant was advised of his constitutional rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), two officers interviewed defendant. Defendant voluntarily spoke with the officers.[2] Defendant denied shooting Jane or having driven the car in May or June 2019. He admitted that he had seen the gun in the glove compartment, but denied that it belonged to him. He maintained that he was extremely inebriated and that sometimes he blacked out. He stated that if the police had evidence proving he was at the scene of the crime, then he must have been there, but he had no memory of it and did not recall being at the scene.

III.

DISCUSSION

Prior to its amendment by Assembly Bill 518 (2021-2022 Reg. Sess.), section 654 provided: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a).)

---

[2] The recording of the interview was played for the jury and the transcript of the interview was admitted at trial.

6

Assembly Bill 518 amended section 654 effective January 1, 2022, to provide, in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Thus, a trial court is no longer required to impose a sentence under the offense providing for the longest possible sentence but may sentence a defendant under any one of the applicable offenses. Assembly Bill 518 "provides the trial court new discretion to impose a lower sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379 (*Mani*).) The People concede Assembly Bill 518 applies retroactively to defendant's case. (See *Mani*, *supra*, at p. 379; *In re Estrada* (1965) 63 Cal.2d 740, 744-746.)

The parties agree the matter must be remanded for full resentencing in light of Assembly Bill 518. (See *People v. Buycks* (2018) 5 Cal.5th 857, 881.) They are correct. (*Mani*, *supra*, 74 Cal.App.5th at p. 379.) Under the amended version of section 654 now in effect, the trial court is no longer required to impose sentence on count 1 (the conviction providing the longest potential term of imprisonment) and its attendant enhancement and to stay execution of the sentences and enhancements on counts 2, 3 and 4. Instead, the court may punish defendant "under either provision." (*Mani*, *supra*, at p. 351.) Accordingly, we reverse the sentence and remand the matter to the trial court so that it may exercise its newly afforded discretion under amended section 654.

IV.

DISPOSITION

The sentence is reversed, and the matter is remanded for full resentencing consistent with Assembly Bill 518. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.