Filed 3/4/14  P. v. Lara CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048951 |
| v. | (Super. Ct. No. BAF1100313) |
| JAMES ELLIOTT LARA, JR., and DAVID GONZALES LARA, | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant James Elliott Lara.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant David Gonzales Lara.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

The Riverside County District Attorney charged David Gonzales Lara and James Elliott Lara with carjacking and unlawfully taking or driving a motor vehicle. James was separately charged with possession of methamphetamine, receiving a stolen car, and being a participant in a criminal street gang. It was alleged James had served one prior prison term and had two prior serious or violent felony convictions within the meaning of the "Three Strikes" law. David was separately charged with making a criminal threat, and it was alleged he personally used a knife during the carjacking, served one prior prison term, and had one prior serious or violent felony conviction within the meaning of the Three Strikes law.

A jury convicted James of possession of methamphetamine, receiving a stolen car, and unlawful taking or driving a car. He was found not guilty of carjacking and active participation in a criminal street gang. David was convicted of carjacking and making a criminal threat. However, the trial court declared a mistrial as to the knife-use enhancement allegation. Both defendants admitted the truth of the prior strike allegations. The trial court sentenced James to a total term of 26 years to life. David was sentenced to a total term of 20 years and four months.

David claims the trial court improperly admitted statements James made during two recorded telephone calls James made from jail. David also argues Penal Code section 654 (all further statutory references are to this code) prohibits the imposition of punishment for both carjacking and making criminal threats. The Attorney General concedes this issue, and we modify the judgment accordingly. However, we find no merit in David's claim of evidentiary error.

James argues this court must remand his case for a new sentencing hearing in light of Proposition 36, "The Three Strikes Reform Act of 2012 [(Reform Act)]." James claims recent changes in the Three Strikes law should apply to him because Proposition 36 became effective while his appeal was pending. We agree and remand for resentencing as to James.

## FACTS

In May 2011, David purchased Dennis Zimdorf's boat. David took his brother, James, to Zimdorf's home one morning to get the boat. Charles Alvarado, a 62-year-old heroin addict and convicted felon who knew James and David, was also at Zimdorf's home. Alvarado drove James to a nearby liquor store so that James could attempt to sell some pills. After James's unsuccessful attempt at this, Alvarado drove him back to Zimdorf's home, parked in front of the house, and then waited for his friend, Matt Berry, to come outside.

James got out of Alvarado's car and had a brief conversation with David. Then both David and James returned to Alvarado's car. James grabbed Alvarado's keys and cane, and he told Alvarado that David needed to talk to him. David approached the driver's side window with a small pocket knife. He repeatedly told Alvarado to get out of his car, and poked the knife at Alvarado's face. At one point, David said, "I ought to stab you. I ought to stab you." Then he said, "Maybe I'll just shoot you in the leg." David asked James if there was a loaded gun in the car, and James said there was. David accused Alvarado of owing some money to a woman, but Alvarado denied owing the money.

Alvarado got out of his car and retrieved his cane from James. Alvarado started to walk along the side of the house and David followed him. David asked for Alvarado's phone number so he could call when Alvarado got the money David claimed Alvarado owed. Although it is unclear how long Alvarado was away from his car, when he walked back to the street, it was gone, as were David, James, and James's car. Alvarado told Zimdorf his car had been stolen and called 911. Zimdorf later testified he saw Alvarado's car and a red truck driving away from his house.

Riverside Sheriff's Deputy David Granito responded to Alvarado's call and took his statement. Alvarado told Granito that he saw his car being driven away and that it was followed by a truck. Alvarado did not identify James and David initially because

3

he did not want to get them into trouble.  He also told the officer he had left his car unlocked with the keys in the ignition.  Alvarado did not mention that David had threatened him with a knife, and threatened to kill him.  He also did not initially tell the officer why he gave James a ride to the liquor store.

Later that day, James asked a woman friend if he could leave a car at her home, and he pointed to Alvarado's car.  Days later, the woman saw sheriff's deputies take Alvarado's car away.

On June 2, 2011, police officers arranged to have Alvarado call James. During their recorded conversation, James told Alvarado that he took Alvarado's car to prevent David from shooting him.  James was arrested the next day.  He gave a statement to police that essentially confirmed Alvarado's account.  James admitted hearing David threaten to shoot Alvarado, and he knew David carried a gun.  James also admitted driving Alvarado's car while David drove James's truck.  James claimed he asked Alvarado for $150 ransom for the car because he needed to give the money to David.

During the interview James admitted possessing methamphetamine.  He voluntarily gave the officers a bindle containing .89 grams of methamphetamine.  James also made several telephone calls from jail.  In one recorded call to his mother, James said he and David went to get the boat at Zimdorf's house when Alvarado showed up. James told his mother that David said something about Alvarado "talking shit" about him, and that James felt compelled to support David.  As James said, "that's how it all started."  James also called an unidentified male and claimed David said he was "gonna fuck him up" when Alvarado arrived at Zimdorf's home.  Again, James told his friend he felt the need to support David.  James claimed David was "tellin' everybody that fuckin,' fuckin' Jimbo, oh, this and that.  Nah, it was his fuckin' stupid, fuckin' bi-polar ass."

4

1. *Aranda/Bruton Error*[1]

Although David and James were tried by different juries, the trial court permitted the district attorney to introduce evidence of the two telephone calls James made from jail at David's trial. In one call, James told an unidentified male that he felt pretty good because "Dave [said] he's gonna take this charge off of me." James explained that David had been angry at him at first because James was supposed to just help him pick up a boat. When "Charlie" drove up, David decided to "fuck him up" and James thought, "So here I go, all right, I got your back, you know, and that's how it all . . . [¶] . . . [¶] [s]tarted." He repeated the story in another call to his mother, claiming that he and David went to get a boat, but when Charlie dove up, David decided to do something to Charlie, and James said, "[a]ll right, well I got [your] back and that's how it all started mom."

Relying primarily on *Aranda, supra,* 63 Cal.2d 518 and *Bruton, supra*, 391 U.S. 123, David claims the trial court committed evidentiary error by admitting the out-of-court statements of his codefendant. David also discusses *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*) because the out-of-court statements in question implicated David in the crimes, and James was not able to cross-examine James.

Although *Crawford* mentioned *Bruton* (*Crawford, supra,* 541 U.S. at p. 57), it never expressly overruled or acknowledged that its decision in any way replaced *Bruton.* Nevertheless, dictum in *Crawford* strongly suggested the Confrontation Clause no longer applied to nontestimonial statements. (*Crawford,* at pp. 60-61.) Indeed, a long line of subsequent state and federal cases, including decisions by the United States Supreme Court itself, have expressly ruled *Crawford* eliminated confrontation clause

[1] *People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*) and *Bruton v. United States* (1968) 391 U.S. 123 (*Bruton*).

protection for nontestimonial statements. (*People v. Arceo* (2011) 195 Cal.App.4th 556, 575 (*Arceo*) ["[T]he confrontation clause applies only to testimonial statements"]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 812 ["Only the admission of testimonial hearsay statements violates the confrontation clause"]; *Whorton v. Bockting* (2007) 549 U.S. 406, 420 [ *Crawford* eliminated "Confrontation Clause protection against the admission of unreliable out-of-court non-testimonial statements"]; *Davis v. Washington,* (2006) 547 U.S. 813, 821 [only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause"].) In short, the Confrontation Clause is violated only by "the admission of *testimonial* hearsay statements." (*People v. Loy* (2011) 52 Cal.4th 46, 66.) James made statements to an unknown male and his mother during recorded telephone calls from jail. Although David submits "[i]t is reasonable to assume from [James's] criminal history and employment as a paid confidential police informant" knew he was being recorded and used this knowledge to shift responsibility to David, we are not persuaded by this assertion.

James had been advised his jail telephone conversations may be recorded, but the mere fact the jail at times records inmate telephone calls in no way transmutes James's casual remarks to his mother and an acquaintance during two such calls into testimonial hearsay statements. (See, e.g., *People v. Loy, supra,* 52 Cal.4th at pp. 66-67.) As noted in *People v. Cervantes* (2004) 118 Cal.App.4th 162, 174, when it is not reasonably anticipated that a statement would be used at trial, the "statement was not testimonial within the meaning of *Crawford*." There is simply no evidence that when James made the statements in question here that he did so in anticipation his statements would be used at trial. As noted in *Arceo, supra,* 195 Cal.App.4th at pp. 571-572, "[T]he confrontation clause has no application to out-of-court nontestimonial statements [citations], including statements by codefendants. [Citations.]"

With respect to the trial court's ruling, Evidence Code section 1230 provides: "Evidence of a statement by a declarant having sufficient knowledge of the

6

subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

James was unavailable and his statements were clearly against his penal interest. Thus, the statements were admissible under Evidence Code section 1230 so long as they were found sufficiently trustworthy. We believe they were. Nothing in the commission of the crime or James's conversations suggests he is particularly adroit at subterfuge. David's suggestions to the contrary are nothing more than mere speculation, unsupported by any evidence in the record. Under the facts presented here, the trial court was entitled to conclude, under a totality of the circumstances, that James's statements, although made while in custody, were trustworthy and admissible.

But even if the evidence was improperly admitted, its admission was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [erroneous admission of statements by a non-testifying codefendant in violation of *Bruton, supra,* 391 U.S. 123]; see also *People v. Duarte* (2000) 24 Cal.4th 603, 618-619 [evidence admitted in violation of Evidence Code section 1230 analyzed under harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836].) Alvarado identified David as the person who threatened him and took his car. He also explained James's role as David's aider and abettor, a role James admitted in both telephone calls. David points to Alvarado's history of substance abuse, inconsistencies in the statements he gave police after the crimes, and other weaknesses in his testimony, to assert prejudice. But these are questions involving witness credibility and evidence examination, roles properly performed by the jury. In sum, we agree with the Attorney General. James's statements

7

merely corroborated other evidence of David's guilt. Considering the substantial corroborating evidence admitted at trial, any error in admitting James's statements was harmless beyond a reasonable doubt.

2. *Proposition 36*

The judgment of conviction was entered on November 3, 2011. On January 6, 2012, the trial court denied James's motion to strike his prior felony conviction for sentencing purposes (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), and sentenced him to a total term of 26 years to life. The court selected count 6, the vehicle theft, as the principle term and imposed 25 years to life as required by the Three Strikes law. The court then imposed a consecutive one-year term for James's service of a prior prison term. The court imposed a concurrent 25-years-to-life term for count 3 and stayed sentenced on count 4 pursuant to section 654.

On November 6, 2012, the voters passed the Reform Act, which now limits Three Strikes sentences to current convictions for serious or violent felonies. (§§ 667, subd. (e)(2)(C); 1170.12, subd. (c)(2)(C).) Proposition 36 reformed the Three Strikes law in two ways relevant here: (1) Under Proposition 36, with certain exceptions, a third strike conviction must be for a serious or violent felony (See §§ 667, subd. (e), 1170.12, subd. (c)); and (2) Proposition 36 added section 1170.126 to the Three Strikes law. Section 1170.126 provides a resentencing option for "persons presently serving" a Three Strikes sentence of 25 years to life, whose sentence under the Proposition 36 reforms would not have been a life sentence. (§ 1170.126, subd. (a).)

Under section 1170.126, the eligible defendant "may file [in the trial court] a petition for a recall of sentence" to request resentencing under Proposition 36; and, if the person is eligible under Proposition 36, the trial court will resentence the person "unless the court, in its discretion, determines that resentencing the [person] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subds.(a), (b), (e), (f), (g).) Accordingly, the practical impact on persons such as James is substantial. Whereas

8

Proposition 36 amended sections 667 and 1170.12 to require nondiscretionary resentencing, section 1170.126 gives the trial court discretion not to resentence a person who "would pose an unreasonable risk of danger to public safety." (Compare §§ 667, subd. (e) & 1170.12, subd. (c) with §1170.126, subd. (f).)

Pointing to the fact his current convictions are neither serious nor violent, James urges this court to remand his case for a new sentencing hearing so that he may be sentenced under the more lenient new legislation. Thus, the issue is whether the Reform Act operates retroactively in favor of defendants, like James, who were sentenced prior to its effective date but whose judgments were not yet final. (See *In re N.D.* (2008) 167 Cal.App.4th 885, 891.) James argues the general rule of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) applies in his favor. We believe James's reliance on *Estrada* is well placed.

Courts of Appeal are split on the issue, and the California Supreme Court has taken it up. (*People v. Contreras* (2013) 221 Cal.App.4th 558, review granted Jan. 29, 2014, S215516 [holding the Reform Act applies retroactively]; *People v. Lewis* (2013) 216 Cal.App.4th 468, review granted Aug. 14, 2013, S211494 [same]; *People v. Lester* (2013) 220 Cal.App.4th 29, review granted Jan. 15, 2014, S214648 [same but with dissent]; *People v. Conley* (2013) 215 Cal.App.4th 1482, 156 Cal.Rptr.3d 508, review granted Aug. 14, 2013, S211275 [holding the Reform Act is not retroactive].)

Under the *Estrada* rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final, unless there is a "saving clause" providing for prospective application. (*Id.* at pp. 742, 745, 748.) All of the cases agree section 1170.126 does not have an express saving clause. The sole remaining published case which found the Reform Act prospective only reasoned that the section 1170.126 petition procedure is the "functional equivalent" of a saving clause. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 172 (*Yearwood*).) We respectfully disagree, for reasons which we will now explain.

9

We do not view section 1170.126 as the functional equivalent of a savings clause. Rather than simply amending sections 667 and 1170.12 to require that a new crime must be a serious or violent felony to warrant an indeterminate life term under the Three Strikes law—in which case *only* those defendants whose convictions were not yet final at the time of the amendment and individuals prosecuted for crimes occurring after the effective date of the Reform Act would benefit (*Estrada*, *supra*, 63 Cal.2d at p. 745)—the electorate provided a potential remedy to *every* Three Strikes defendant ever sentenced to an indeterminate life term for a non-serious or non-violent felony, including defendants whose judgments have been *final for more than 19 years*.[2]

In addition, section 1170.126 further provides: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (§ 1170.126, subd. (k).) And the remedy of automatic resentencing under *Estrada* would be "otherwise available" to individuals in defendant's position. Thus, we cannot say the electorate's enactment of section 1170.126, a statute intended to provide a remedy to those who would not otherwise be entitled to benefit from the amendment to sections 667 and 1170.12, was intended to deny the benefit of those amendments to individuals who would otherwise receive them.

We recognize we cannot tell the electorate how a savings clause must be structured. (*In re Pedro T.*, (1994) 8 Cal.4th 1041, 1048-1049.) Still, we can properly hold—consistent with *Estrada*—if the Legislature or the electorate enact an ameliorative amendment reducing a criminal penalty and intend that it only apply prospectively, then their intent to do so must be clearly expressed in order to overcome the "inevitable inference" that they must have intended the amendment apply retroactively. Section 1170.126 does not *clearly* express any such intent. (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

---

[2] The Three Strikes law was first enacted in March 1994. We use the phrase "potential remedy" because the trial court retains discretion to decide whether to recall the sentenced prisoner's sentence. (§ 1170.126, subd. (f).)

10

We also note that while the Attorney General argues the Reform Act's amendments to sections 667 and 1170.12 cannot be applied retroactively, she concedes the amendments would apply to any individual who committed a felony prior to the enactment of the Reform Act but sentenced after the Reform Act became effective. However, when a defendant is sentenced under a statute for a crime that occurred prior to the statute's enactment, such an application is by its very nature retroactive. To claim the amendment is applied prospectively only so long as the sentencing date occurs after the effective date of the enactment is meritless.

Finally, when a statute increases the punishment for a particular offense and the statute is applied to a crime that occurred prior to enactment, that application violates ex post facto clauses of the federal Constitution and the state Constitution because it is applied retroactively. (*Collins v. Youngblood* (1990) 497 U.S. 37, 43 [legislatures cannot enact "retrospective" laws increasing punishment for offenses that have already occurred]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [same]; see also *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1544-1545 [Proposition 215, the compassionate use act, may be "retroactively" applied to cases pending at time initiative became effective].) While the constitutionality of a retroactive penalty provision turns on whether the penalty increases or decreases punishment, the retroactive nature of the application does not.

In sum, we find no indication in the Reform Act that the electorate intended it solely to operate prospectively. Accordingly, under *Estrada* the Reform Act applies retroactively to all non final judgments, and James is entitled to be resentenced.

3. *Section 654*

David argues the trial court improperly imposed separate sentences for counts 1 and 2. Specifically, he asserts the carjacking and criminal threat were committed with the same intent and objective. The Attorney General concedes the issue. We accept the concession and modify the judgment accordingly.

11

## DISPOSITION

The judgment against David is modified to stay sentence imposed for count 2, making criminal threats, pursuant to section 654. The clerk of the superior court is directed to modify the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment against David is affirmed. The judgment against James is reversed and remanded for the trial court to resentence James pursuant to section 667, subdivision (e)(1), (2)(C) and section 1170.12, subdivision (c)(1), (2)(C). In all other respects, the judgment against James is affirmed.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

12