Filed 9/24/20  P. v. Prieto CA5
Opinion following transfer from Supreme Court

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARKOS ANTHONY PRIETO,<br><br>  Defendant and Appellant. | F076200<br><br>(Super. Ct. No. BF166768A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua and Tiffany Organ-Bowles, Judges.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Lewis A. Martinez, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Markos Anthony Prieto—charged and convicted as Marcos Anthony Prieto—contends reversal is required because the court erroneously conditioned its grant of his self-representation motion on his forfeiting a continuance. He further argues he is entitled to a remand to permit the court to exercise its discretion whether to permit him to seek mental health diversion under the newly enacted section 1001.36 of the Penal Code. (Undesignated statutory references are to the Penal Code.) Additionally, the parties agree Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), which amended section 667.5, former subdivision (b), applies retroactively to defendant, and his prior prison enhancements must be stricken under the amended statute.

In our initial opinion, we remanded for the court to strike the enhancements imposed under section 667.5, former subdivision (b) and to resentence defendant accordingly. We rejected defendant's claim that section 1001.36 was retroactive. The matter was subsequently transferred to us by the California Supreme Court to reconsider our decision in light of *People v. Frahs* (2020) 9 Cal.5th 618, 631–636 (*Frahs*) in which the California Supreme Court held section 1001.36 applies retroactively to judgments not yet final on appeal.

We now conditionally reverse defendant's conviction and remand for the trial court to conduct an eligibility hearing pursuant to section 1001.36. On remand, if the court determines defendant does not meet the eligibility criteria under section 1001.36, or defendant does not successfully complete diversion and his convictions and sentence are reinstated, the court is ordered to strike the enhancements imposed under section 667.5, former subdivision (b) and to resentence defendant accordingly.

In all other respects, the judgment is affirmed.

## FACTUAL BACKGROUND

In September 2016, defendant, who was incarcerated, was assigned to the electronic monitoring program (EMP). Through the EMP, defendant was released from

custody to his home and was required to wear an ankle monitor. Before his release, a sheriff's aide advised defendant he could be charged with escape if he took off the ankle monitor.

Three days after his release into the EMP, the sheriff's office received a tamper notice from defendant's ankle monitor. Two deputies went to defendant's registered address and found the ankle monitor in the driveway. The monitor's strap had been cut. The deputies knocked on the door to the house and announced their presence, but no one answered. Three months later, a probation officer encountered defendant, and defendant falsely identified himself when the officer asked for his identity. After the probation officer ran the name defendant provided through dispatch and was unable to verify defendant's identity, she took him to the central receiving facility to identify him. Defendant was subsequently arrested and charged with escape by use of force in violation of section 4532, subdivision (b)(2).

Before trial on the escape charge, defendant requested the appointment of a new attorney and the court held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). During the hearing, defendant stated he would feel more comfortable representing himself than proceeding with his appointed counsel. The court ultimately denied defendant's request to substitute a new attorney and noted defendant could raise his request for self-representation before a different court.

A week later, on the day of the scheduled jury trial—which was the last day of the 60-day trial period—another court heard defendant's request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). During the *Faretta* hearing, the court directed defendant to complete an advisement and waiver of right to counsel form and admonished defendant of the risks and expectations of self-representation, including that defendant would "be at a considerable disadvantage going up against the seasoned trial attorney." The court explained defendant would not receive special treatment or help whatsoever from the court if he represented himself. Defendant

3.

repeatedly stated that he "insist[ed] on representing [him]self." Before reviewing the advisement and waiver of counsel form with defendant, the court asked defendant if he would be ready to proceed with trial that day if the court granted his request to appear pro se. Defendant responded, "Yeah." The court again confirmed:

"THE COURT: You would be ready. No continuances or—

"THE DEFENDANT: If I had to, I will, you know, I'll wing it, but I could—I need to study, reading, but if I have to, I will."

The judge later asked defendant if he understood "that no continuances [we]re going to be allowed in this case absent a showing of good cause and that those requests made most likely before the trial will be denied." Defendant responded, "Now I do." The court advised defendant against proceeding pro se and recommended he accept the court-appointed counsel. The prosecutor objected to defendant's request for self-representation, noting the potential for delay if defendant wanted time to research defenses and the charges.

Defendant again repeatedly advised the court he would be ready to proceed with trial that day.

"THE COURT: And, [defendant], as you sit there now, if this motion is granted and you by law can represent yourself, is it your understanding that you are ready to proceed to trial since today is the day for jury trial?

"THE DEFENDANT: Yeah, I understand.

"THE COURT: Is that a yes?

"THE DEFENDANT: Yes."

"[THE COURT:] [Defendant], if I understood you correctly, you stated numerous times you are ready for trial to begin today if you are representing yourself. Is that correct?

"THE DEFENDANT: If the CALCRIM was all I needed to be—

"THE COURT: It's a yes or no question, sir.

4.

"THE DEFENDANT: All right. If the CALCRIM is what I needed to—is all I need, then, yes, I am ready, but other than that, then I'm unsure. But yes.

"THE COURT: All right. Let me ask you one more time, and all I want to hear is yes or no. [¶] If this motion is granted, since today is day 60 of 60 for purposes of jury trial, are you ready to proceed to jury trial today?

"THE DEFENDANT: Yeah, we could go to jury trial today.

"THE COURT: Is that a yes?

"THE DEFENDANT: Yes, your Honor."

Defendant's former counsel informed the court she had provided defendant with all the discovery in the case except for the body camera footage. She explained, though the *Faretta* hearing took place on the last day of the 60-day trial period, defendant had voiced his request for self-representation after the *Marsden* hearing, which was originally scheduled weeks before but had to be rescheduled based on defense counsel's scheduling conflict.

The court held the request was "not untimely in that even though today is day 60 of 60, it appears to the Court that [defendant] has reasons for making this motion, as well as [defendant] is ready to proceed today with trial so it would not cause any delay whatsoever." It noted defendant, "while not substantially qualified to represent himself, is at least competent enough to do so." Accordingly, the court accepted defendant's understanding and waiver of his right to an attorney and granted his request to represent himself.

The case was then assigned to the trial department. The trial court confirmed defendant intended to represent himself and that he was ready to proceed with trial.

"THE COURT: Okay. Are you ready to proceed to trial today?

"[DEFENDANT]: Yes.

"THE COURT: So you want to go forward with trial?

5.

"[DEFENDANT]:  Yeah."

The judge also confirmed defendant had received the discovery file and the preliminary hearing transcript from his former counsel.  The case proceeded to trial and a jury convicted defendant of escape by force and found true two charged prison prior enhancements under section 667.5, former subdivision (b) and a strike prior.  The trial court sentenced defendant to eight years, the midterm doubled based on his strike prior, enhanced by an additional two years based on defendant's prison prior enhancements, for a total term of imprisonment of 10 years' imprisonment.

## DISCUSSION

### I.  The Court Did Not Err in Analyzing Potential for Delay When Considering Defendant's *Faretta* motion

Defendant first contends the court erred in conditioning the grant of his *Faretta* motion on him forgoing a continuance.

### A.    Standard of Review and Applicable Law

A criminal defendant has a constitutional right to counsel at all critical stages of a criminal prosecution.  (*People v. Doolin* (2009) 45 Cal.4th 390, 453.)  However, a defendant also has the constitutional right to waive his right to counsel and represent himself upon a timely and unequivocal request.  (See *Faretta*, *supra*, 422 U.S. at pp. 819, 834–835; *People v. Marshall* (1997) 15 Cal.4th 1, 20–21.)

A trial court must grant a defendant's request for self-representation if the defendant is mentally competent, unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently.  (*People v. Welch* (1999) 20 Cal.4th 701, 729; *People v. Windham* (1977) 19 Cal.3d 121, 127–128.)  "The timeliness requirement 'serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice.'  [Citation.]"  (*People v. Doolin*, *supra*, 45 Cal.4th at p. 454.)  When considering whether a motion for self-representation is timely, "a trial court

properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*People v. Lynch* (2010) 50 Cal.4th 693, 726, abrogated on other grounds as stated in *People v. McKinnon* (2011) 52 Cal.4th 610, 637.)

### B.     Analysis

Defendant argues the court improperly curtailed his right to self-representation and violated his rights to due process and a fair trial by indicating it would grant his timely *Faretta* motion only if he would immediately proceed to trial. He further contends the court was required to grant him a reasonable continuance to allow him to prepare his defense. He asserts it is immaterial that he did not actually seek a continuance because the court committed reversible error by preemptively denying any such request. The People respond the court was allowed to consider defendant's representation he was ready to proceed to trial without delay in ruling upon his *Faretta* motion, and "the court's grant of self-representation was not conditioned upon [defendant] not asking for a continuance." We agree with the People.

Our Supreme Court has held a court does not abuse its discretion in concluding a defendant can represent himself only if he is ready to proceed to trial without delay. (See *People v. Valdez* (2004) 32 Cal.4th 73, 103 (*Valdez*) ["'a midtrial *Faretta* motion may be denied on the ground that delay or a continuance would be required'"]; *People v. Jenkins* (2000) 22 Cal.4th 900, 1039–1040 (*Jenkins*) [same]; *People v. Clark* (1992) 3 Cal.4th 41, 110 (*Clark*) [same].) In *Valdez*, *Jenkins*, and *Clark*, the California Supreme Court recognized the existence of case law suggesting a continuance is required where a

7.

*Faretta* motion is granted,[1] but it explained this authority was not controlling where the "trial court made clear its intent to deny the *Faretta* motion as untimely if a continuance would be necessary," and "[t]he *Faretta* motion was ultimately granted only when defendant expressly represented he was able to proceed without a continuance."  (*Clark*, *supra*, at p. 110; see *Valdez*, *supra*, at pp. 102–103 [holding trial court acted within its discretion by conditioning grant of *Faretta* motion, made "moments before jury selection was set to begin," on defendant's agreement trial would not be delayed, reasoning that trial court's authority to deny a *Faretta* motion as untimely necessarily includes authority to condition grant of a *Faretta* motion on defendant's agreement grant of motion would not result in delay]; *Jenkins*, *supra*, at p. 1039 [reaffirming principle announced in *Clark* "sanction[ing] the trial court's decision to condition the granting of the right of self-representation on defendant's waiver of a continuance"].)

Thus, here, the court was entitled to consider whether defendant was ready to proceed with trial when evaluating whether his *Faretta* motion, made on the last day of the trial period, was timely and should be granted.  (See *Valdez*, *supra*, 32 Cal.4th at p. 103; see also *People v. Tyner* (1977) 76 Cal.App.3d 352, 355 [defendant's motion for self-representation was timely because it was "made prior to trial and was not accompanied by any request for a continuance" and "its grant would not have obstructed the orderly administration of justice"]; *People v. Herrera* (1980) 104 Cal.App.3d 167,

---

[1]Prior to the California Supreme Court's decisions in *Valdez*, *Jenkins* and *Clark*, a number of courts had held or suggested that once a trial court grants an untimely motion for self-representation, it must then grant "a reasonable continuance for preparation by the defendant." (See *People v. Fulton* (1979) 92 Cal.App.3d 972, 976 ["While it is now settled that a trial court may *deny* a request for self-representation made on the very eve of trial, on the ground that granting the motion would involve a continuance for preparation, the very rationale of that doctrine requires that, if the trial court, in its discretion, determines to *grant* the request for self-representation it must then grant a reasonable continuance for preparation by the defendant"]; *People v. Bigelow* (1984) 37 Cal.3d 731, 741, fn. 3 [noting in dictum trial court "should have considered granting a continuance" where it did not intend to deny defendant's motion for self-representation as untimely]; see also *People v. Wilkins* (1990) 225 Cal.App.3d 299, 307; *People v. Hill* (1983) 148 Cal.App.3d 744, 756.)

174–175 [finding *Faretta* request timely because defendant indicated he did not need continuance]; see generally *People v. Lynch*, *supra*, 50 Cal.4th at p. 722 [purpose of timeliness requirement is "'to prevent the defendant from misusing the [*Faretta*] motion to unjustifiably delay trial or obstruct the orderly administration of justice'"].)  And it was not error for the court to grant defendant's *Faretta* motion only if defendant was ready to proceed to trial immediately.  (See *Valdez*, *supra*, at pp. 102–103; *Clark*, *supra*, 3 Cal.4th at p. 110; *Jenkins*, *supra*, 22 Cal.4th at p. 1039.)  Thus, we cannot conclude defendant's rights to due process and a fair trial were violated.

Notably, the court did not explicitly condition the grant of the motion on defendant's agreement he would not request a continuance of the trial proceedings. Rather, the court informed defendant "no continuances [we]re going to be allowed in this case *absent a showing of good cause* and that those requests made most likely before the trial will be denied."  (Italics added.)  This statement was not the functional equivalent of a preemptive bar against *any* continuance.  Instead, it appropriately notified defendant a continuance would not be granted in the absence of good cause.  (See *People v. Espinoza* (2016) 1 Cal.5th 61, 81 [finding no error where court admonished defendant "that if he chose to represent himself, he was 'not going to get any continuances *unless they are reasonable requests*, which given the time frame we've given to the jurors we need to move forward with this case" and holding the court "acted within its discretion to condition the grant of defendant's *Faretta* motion on his ability to immediately proceed to trial unless he had a reasonable basis for a short continuance"]; *People v. Windham*, *supra*, 19 Cal.3d at p. 128, fn. 5 ["a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice.  For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial *without some showing of reasonable cause* for the lateness of the request.  In such a case the motion for self-representation is addressed

9.

to the sound discretion of the trial court[.]" (Italics added.)]; see also § 1050, subd. (e) ["Continuances shall be granted only upon a showing of good cause"]; *People v. Jenkins*, *supra*, 22 Cal.4th at p. 1039 ["Defendant was no more entitled to a continuance when he became his own counsel than he was entitled to a continuance at former counsel's request"].) Defendant never requested a continuance. Instead, he repeatedly confirmed he was ready to proceed with trial that day. And we cannot conclude on the record before us that if defendant had sought a reasonable continuance for good cause, the trial court would have necessarily denied such a request.

We reject defendant's first contention.

## II. Defendant Is Entitled to a Limited Remand for the Court to Consider His Eligibility for Pretrial Diversion Pursuant to Section 1001.36

Defendant next contends his case should be remanded to permit the trial court to consider whether he should be granted pretrial diversion pursuant to newly enacted section 1001.36. We agree remand is warranted on this basis.

### A. Section 1001.36

Effective June 27, 2018, the Legislature created a diversion program for defendants with diagnosed and qualifying mental disorders such as schizophrenia, bipolar disorder, and posttraumatic stress disorder. (§ 1001.36, subd. (a).) One of the stated purposes of the legislation was to promote "[i]ncreased diversion of individuals with mental disorders … while protecting public safety." (§ 1001.35, subd. (a).)

"'[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (e).)

10.

"On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion … if the defendant meets all of the requirements …." (§ 1001.36, subd. (a).) There are six requirements. (*Id.*, subd. (b)(1).) First, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." (*Id.*, subd. (b)(1)(A).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert." (*Ibid.*) Second, the court must also be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (*Id.*, subd. (b)(1)(B).) "A court may conclude that the defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, … the court concludes that the defendant's mental disorder *substantially contributed* to the defendant's involvement in the commission of the offense." (*Ibid.*, italics added.) Third, "a qualified mental health expert" must opine that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." (*Id.*, subd. (b)(1)(C).) Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial. (*Id.*, subd. (b)(1)(D).) Fifth, the defendant must agree "to comply with treatment as a condition of diversion." (*Id.*, subd. (b)(1)(E).) And finally, the court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety … if treated in the community." (*Id.*, subd. (b)(1)(F).)

If a trial court determines that a defendant meets the six requirements, then the court must also determine whether "the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) The court may then grant diversion and refer the defendant to an approved treatment program. (*Id.*, subd. (c)(1)(B).) "The period

11.

during which criminal proceedings against the defendant may be diverted shall be no longer than two years." (*Id.*, subd. (c)(3).) If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) However, if the defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings …." (*Id.*, subd. (e).)

## B. Section 1001.36 Applies Retroactively to Defendant's Case

Defendant contends his case should be remanded for the trial court to consider his eligibility for pretrial diversion pursuant to section 1001.36, which he claims applies to his case retroactively. The People maintain section 1001.36 does not apply retroactively to cases, such as this, that are already adjudicated.

The California Supreme Court recently resolved a split amongst the Courts of Appeal regarding the retroactivity of section 1001.36 and concluded section 1001.36 applies retroactively to judgments not yet final on appeal. (*Frahs*, *supra*, 9 Cal.5th at pp. 631–636.) It held "neither the text nor the history of section 1001.36 clearly indicates that the Legislature intended that the [*In re Estrada* [(1965) 63 Cal.2d 740] rule[, which states that an amendatory statute lessening punishment for a crime is presumptively retroactive and applied to all persons whose judgments were not yet final at the time the statute took effect,] would not apply to this diversion program." (*Frahs*, *supra*, at p. 624.)

Here, defendant was convicted and sentenced before section 1001.36 went into effect and his appeal was pending when this provision became effective. Thus, pursuant to the Supreme Court's holding in *Frahs*, section 1001.36 applies retroactively to this case.

## C.  Defendant is Entitled to Conditional Reversal of His Conviction

We next consider whether the record before us supports a limited remand and conditional reversal of defendant's conviction for the trial court to consider defendant's eligibility for mental health diversion.  Defendant argues remand is warranted because the record establishes the first eligibility prong:  he was diagnosed with an unspecified personality disorder during the section 1369 evaluation process.  The People argue, even if the statute is deemed to be retroactive, defendant has not made an adequate showing his case should be remanded.  They contend defendant has not established he satisfies the six eligibility criteria listed in section 1001.36.[2]  They further argue remand would be futile because, in concluding there were no mitigating circumstances, "the court necessarily reached the conclusion that any mental disorder or illness that [defendant] suffers from was not a significant factor in the commission of the offense."  Additionally, they contend because defendant was statutorily ineligible for probation, he "would also be ineligible for diversion because he would pose an unreasonable risk of danger to public safety if treated in the community."  Finally, they argue defendant was prohibited from receiving a suspended sentence; but if the court granted diversion, it would necessarily have to suspend imposition of sentence in violation of sections 667 and 1203.  We conclude remand is warranted.

In *Frahs*, the California Supreme Court held "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when … the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))."  (*Frahs*, *supra*, 9 Cal.5th at p. 640.)  In so holding, the *Frahs* court acknowledged that "[w]hen, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is

---

[2]The People did not file additional briefing after the California Supreme Court issued its decision in *Frahs*, *supra*, 9 Cal.5th 618.

unlikely to include information pertaining to several eligibility factors, such as whether the defendant consents to diversion (§ 1001.36, subd. (b)(1)(D)), agrees to comply with treatment as a condition of diversion (*id.*, subd. (b)(1)(E)), or has provided the opinion of a qualified mental health expert that the defendant's symptoms would respond to mental health treatment (*id.*, subd. (b)(1)(C))." (*Frahs*, at p. 638.)

Here, we conclude "the record affirmatively discloses" defendant "appears to meet at least the first threshold eligibility requirement for mental health diversion," he suffers from a qualifying mental disorder. (See *Frahs*, *supra*, 9 Cal.5th at p. 640.) Before trial, defense counsel raised a doubt as to defendant's competency to stand trial within the meaning of section 1368. The court appointed a physician to evaluate defendant, and the physician prepared a report discussing his evaluation and diagnosis of defendant. In his assessment, the physician opined defendant was competent to stand trial and listed the following under the heading "DSM V Diagnosis": "Unspecified Personality Disorder" and "Adult Antisocial Behavior."[3] As defendant acknowledges, antisocial personality disorder is not a qualifying mental disorder for pretrial diversion pursuant to section 1001.36, subdivision (b)(1)(A). However, "unspecified personality disorder" is not excluded as a qualifying mental disorder under this section. (See *Ibid*.) Thus, we conclude this record sufficiently reflects defendant "appears to meet at least the first threshold eligibility requirement." (*Frahs*, *supra*, 9 Cal.5th at p. 640, see *id.* at p. 638.)

We also cannot conclude the record before us establishes that remand would be futile. In *Frahs*, the California Supreme Court expressly considered and rejected the People's contention raised here, that in concluding there were no mitigating circumstances, "the court necessarily reached the conclusion that any mental disorder or illness that [defendant] suffers from was not a significant factor in the commission of the

---

[3]After considering the physician's report, the court found defendant competent to stand trial.

14.

offense." The *Frahs* court held "these findings do not conclusively establish that a remand would be futile." (*Frahs*, *supra*, 9 Cal.5th at p. 639.) Rather, "the trial court could find that th[is] criteri[on] for diversion [is] satisfied even if the court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes." (*Ibid.*)

We also cannot conclude defendant's ineligibility for probation establishes he would "be ineligible for diversion because he would pose an unreasonable risk of danger to public safety if treated in the community." Rather, as the *Frahs* court held,

> "As a preliminary matter, the Legislature left it to trial courts to make fact-specific evaluations of risk under section 1001.36, subdivision (b)(1)(F). If the Legislature had intended to make all defendants who are ineligible for probation also ineligible for diversion, it could have easily said so, just as the amendments enacted by Senate Bill 215 (2017–2018 Reg. Sess.) specified that defendants charged with certain crimes were categorically disqualified. Moreover, a defendant may be ineligible for probation for numerous reasons other than being found to be an unreasonable risk of danger of public safety. (E.g., § 1210.1, subd. (b).) Here, defendant … was ineligible for probation under section 1203, subdivision [(e)(4) (probation shall not be granted to any person who has been previously convicted twice in this state of a felony) and section 667, subdivision (c)(2) (probation shall not be granted to any defendant who is convicted of a felony where it has been pled and proved that the defendant has one or more prior serious or violent felony convictions)]. The trial court made no finding regarding whether defendant would pose an unreasonable risk of danger to public safety if treated in the community, and we decline to interpret its ruling in such a manner." (*Frahs*, *supra*, 9 Cal.5th at p. 639.)

Finally, we disagree with the People that sections 667 and 1203 prohibit the court from suspending defendant's sentence to allow for pretrial diversion. As the *Frahs* court reasoned, "by conditionally reversing defendant's convictions and sentence for an eligibility hearing under section 1001.36, the case would be restored to its procedural posture before the jury verdict for purposes of evaluating defendant's eligibility for pretrial mental health diversion. [Citation.] At that point, defendant faced … mere allegation[s] of a prior serious or violent felony conviction [and two prior felony

15.

convictions], which [are] not enough to prohibit a suspended sentence or diversion."
(*Frahs*, *supra*, 9 Cal.5th at pp. 639–640.)

Accordingly, a conditional remand is warranted. We express no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible. "'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.'" (*Frahs*, *supra*, 9 Cal.5th at p. 641.)

## III.    Senate Bill 136

In supplemental briefing, defendant contends his 2 one-year prior prison term enhancements imposed pursuant to Penal Code section 667.5, former subdivision (b) must be stricken in light of Senate Bill 136, which was signed into law on October 8, 2019, and became effective on January 1, 2020. The People concede Senate Bill 136 applies retroactively to this case and the prison prior enhancements should be stricken. (See *In re Estrada*, *supra*, 63 Cal.2d at p. 742.) We remand for the trial court to strike these enhancements.

At the time defendant was charged, convicted, and sentenced, Penal Code section 667.5, former subdivision (b) provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each

16.

prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony ….”

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill 136. (Stats. 2019, ch. 590, § 1.) Effective January 1, 2020, Penal Code section 667.5, subdivision (b) now provides, in pertinent part:

> “[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code ….”

In other words, a prior prison term enhancement will now only apply if a defendant served the prior prison term for a qualifying “sexually violent offense.” The Legislature did not expressly declare or in any way indicate it did not intend Senate Bill 136 to apply retroactively.

> “When an amendatory statute … lessens the punishment for a crime …, it is reasonable for courts to infer, absent evidence to the contrary and as a matter of statutory construction, that the Legislature intended the amendatory statute to retroactively apply to the fullest extent constitutionally permissible—that is, to all cases not final when the statute becomes effective. [Citations.]” (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972; see *In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

We conclude Senate Bill 136 applies retroactively to this case and, because defendant’s prior prison terms were not served for sexually violent offenses, the related enhancements imposed pursuant to section 667.5, former subdivision (b) are now unauthorized and must be stricken. Accordingly, on remand, if defendant’s conviction is reinstated the trial court is ordered to strike defendant’s prior prison enhancements and to prepare an amended abstract of judgment reflecting defendant’s sentence with these enhancements stricken.

17.

## DISPOSITION

We conditionally reverse defendant's conviction and remand for the trial court to conduct an eligibility hearing pursuant to section 1001.36. On remand, if the court determines defendant does not meet the eligibility criteria under section 1001.36, or defendant does not successfully complete diversion and his convictions and sentence are reinstated, the court is ordered to strike the enhancements imposed under section 667.5, former subdivision (b) and to prepare and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

PEÑA, J.

WE CONCUR:


HILL, P.J.


LEVY, J.