Filed 4/12/21  P. v. Camacho CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090113 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F01261) |
| v. | |
| FRANK CAMACHO, | |
| Defendant and Appellant. | |

Defendant Frank Camacho and codefendants Joshua Parrish and Adam Villa were convicted of attempted murder, attempted robbery, and related firearm crimes.  On appeal, defendant argues his conviction for attempted murder must be reversed in the wake of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).  We disagree.

Defendant also contends his custody credits were miscalculated in the trial court.  The People concede the issue.  We will accept the People's concession and modify the judgment accordingly.  We will affirm the judgment as modified.

1

## BACKGROUND

Given defendant's contentions on appeal, we provide only a brief recitation of the facts.[1] In February 2015, defendant, Parrish, and Villa arrived at the victim's home under the pretext of purchasing marijuana. When the victim opened the door, Villa pointed a gun in his face and a violent melee ensued. The victim, who was unarmed, began fighting with Villa over the gun. Meanwhile, defendant and Parrish, who also were armed, pushed their way inside. During the tussle, the three intruders each shot at the victim a total of five to 10 times. A friend of the victim, who was visiting at the time of the incident, also was badly beaten. Eventually, the victim chased the three intruders outside and the men left in a waiting vehicle.

The victim suffered several gunshot wounds to his legs, abdomen, buttocks, bladder, stomach, and back. These injuries required the victim to undergo multiple surgeries.

In December 2017, a jury found defendant guilty of attempted murder and attempted robbery while entering a structure and acting in concert. (Pen. Code, §§ 664/187, subd. (a), 664/211, 213, subd. (a)(1)(A).)[2]

In July 2019, the trial court sentenced defendant to state prison for an aggregate term of 27 years, as follows: seven years for the attempted murder conviction, plus 20 years consecutive for a firearm enhancement, plus six years consecutive for the attempted robbery conviction (stayed under § 654), plus another 20 years for a firearm enhancement (stayed under § 654).

---

[1] Defendant was tried alongside his codefendants Parrish and Villa. This factual background is taken from our prior decision in *People v. Villa* (July 14, 2020, C089392) [nonpub. opn.], review granted September 16, 2020, S263899.

[2] Undesignated statutory references are to the Penal Code.

DISCUSSION

A.      *Senate Bill 1437 (2017-2018 Reg. Sess.)*

Defendant does not dispute that he is precluded from petitioning for relief under section 1170.95 because he was convicted of attempted murder and relief under section 1170.95 is limited to defendants convicted of murder.  In fact, there is broad consensus that section 1170.95 does not provide a mechanism to vacate an attempted murder conviction.  (See, e.g., *People v. Love* (2020) 55 Cal.App.5th 273, 282, review granted Dec. 16, 2020, S265445; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 223; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1008, review granted Mar. 11, 2020, S259948 (*Medrano*); *People v. Munoz* (2019) 39 Cal.App.5th 738, 754, review granted Nov. 26, 2019, S258234 (*Munoz*); *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1105, review granted Nov. 13, 2019, S258175 (*Lopez*).)  Thus, "even courts that have taken a broader interpretation of the changes made by Senate Bill [ ] 1437 . . . have . . . concluded that section 1170.95 limits relief only to defendants convicted of murder."  (*People v. Flores* (2020) 44 Cal.App.5th 985, 994.)

Nevertheless, relying on the decision in *Medrano, supra*, 42 Cal.App.5th 1001, review granted March 11, 2020, S259948, defendant contends the changes made by Senate Bill 1437 entitle him to review of his attempted murder conviction on direct appeal under the retroactivity principles first articulated in *In re Estrada* (1965) 63 Cal.2d 740.  We disagree.

Unlike the consensus that has developed on the inapplicability of the section 1170.95 petition process to attempted murder convictions, there has been disagreement amongst the Courts of Appeal on whether Senate Bill 1437's abrogation of the natural and probable consequences doctrine applies to attempted murder, such that a defendant whose conviction is not yet final may take a direct appeal based upon the legislative amendments to sections 188 and 189.  (Compare *Medrano, supra*, 42 Cal.App.5th at p. 1013 [under Senate Bill 1437, "the natural and probable consequences doctrine is no

3

longer a viable theory of accomplice liability for attempted murder"], review granted Mar. 11, 2020, S259948, *People v. Larios* (2019) 42 Cal.App.5th 956, 970 [same], review granted Feb. 26, 2020, S259983, and *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642 [same], review granted June 10, 2020, S261768, with *Lopez, supra*, 38 Cal.App.5th at pp. 1104, 1106 ["The Legislature's obvious intent [was] to exclude attempted murder from the ambit of the Senate Bill 1437 reform" and "legislative prohibition of vicarious liability for murder does not, either expressly or impliedly, require elimination of vicarious liability for attempted murder"], review granted Nov. 13, 2019, S258175, *Munoz, supra*, 39 Cal.App.5th at p. 753 [same], review granted Nov. 26, 2019, S258234, and *People v. Dennis* (2020) 47 Cal.App.5th 838, 844 [same], review granted July 29, 2020, S262184.)

As explained below, we adopt the reasoning of those courts that find Senate Bill 1437 does *not* apply to convictions for attempted murder.

"Our role in construing a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.]" (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

Based on the plain language of Senate Bill 1437, we conclude that the bill applies only to murder convictions using the law's petition procedure. "[T]here is nothing ambiguous in the language of Senate Bill 1437, which, in addition to the omission of any reference to attempted murder, expressly identifies its purpose as the need 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying

4

felony who acted with reckless indifference to human life.' [Citation.] Had the Legislature meant to bar convictions for attempted murder under the natural and probable consequences doctrine, it could easily have done so." (*Lopez, supra*, 38 Cal.App.5th at p. 1104, review granted Nov. 13, 2019, S258175; see also *Munoz, supra*, 39 Cal.App.5th at p. 757 [all indications from legislative history are that the exclusion of attempted murder was intentional], review granted Nov. 26, 2019, S258234.) Instead, the Legislature repeatedly referred only to first and second degree murder. (*Lopez*, at p. 1105, review granted.) Notably, in discussing the fiscal impact of Senate Bill 1437, the Legislature also referred only to defendants serving prison sentences for first and second degree murder. (*Lopez*, at p. 1105, review granted.)

"The Legislature's obvious intent to exclude attempted murder from the ambit of the Senate Bill 1437 reform is underscored by the language of new section 1170.95 . . . . Section 1170.95, subdivision (a), authorizes only those individuals 'convicted of felony murder or murder under a natural and probable consequences theory' to petition for relief; and the petition must be directed to 'the petitioner's murder conviction.' " (*Lopez, supra*, 38 Cal.App.5th at pp. 1104-1105, review granted Nov. 13, 2019, S258175.)

Furthermore, to the extent that defendant's assertion that we may reverse his conviction on direct appeal rests upon *In re Estrada, supra*, 63 Cal.2d 740, we note that a "petitioning procedure like that created by section 1170.95 amounts to . . . an indication that the Legislature intended an ameliorative provision to apply prospectively only. When the Legislature creates a statutory procedure by which defendants may avail themselves of a change in the law, that remedy must be followed and relief is not available on direct appeal. As several recent authorities recognize, this means that Senate Bill 1437 should 'not be applied retroactively to nonfinal convictions on direct appeal.' " (*Munoz, supra*, 39 Cal.App.5th at p. 751, review granted Nov. 26, 2019, S258234; see also *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1158; *People v. Martinez* (2019) 31 Cal.App.5th 719, 729 ["there is no indication that reversal of a defendant's sentence

on direct appeal without compliance with the procedures outlined in section 1170.95 was among the 'rights' the Legislature sought to preserve in enacting Senate Bill 1437"].)

We also are not persuaded by defendant's argument that the omission of attempted murder from Senate Bill 1437 would incentivize murder. In support of this claim, defendant relies on the decision in *Sanchez* wherein the Court of Appeal reasoned that a "person may be convicted of attempted murder on natural and probable consequences theory but a person may no longer be convicted of murder on that theory. This, in turn, means that persons convicted of murder on this theory will inevitably end up with lesser overall sentences than those convicted of attempted murder on this theory. And this, in turn, will 'incentiviz[e] murder' (ostensibly, over attempted murder) because the sentence for murder on this theory will invariably be *less* than the sentence for attempted murder on this theory." (*People v. Love, supra*, 55 Cal.App.5th at p. 290, review granted Dec. 16, 2020, S265445, citing *People v. Sanchez, supra*, 46 Cal.App.5th at p. 643, review granted June 10, 2020, S261768.) We do not find this reasoning persuasive.

We instead follow the reasoning of the Court of Appeal in *Munoz,* in which the court said "it is far from clear that interpreting Senate Bill 1437 to apply to convictions for murder, but not attempted murder, will always, or typically, result in longer sentences for the latter." (*Munoz, supra*, 39 Cal.App.5th at pp. 757-758, review granted Nov. 26, 2019, S258234.) The basic punishment for attempted murder is already far less severe than the punishment for murder; thus, this interpretation does not undermine the goal of making punishment commensurate with culpability. (*Id*. at p. 758.) And "[t]o the extent a disparity might exist in an individual case, that circumstance is not sufficient to render the plain language of the statute absurd." (*Id*. at pp. 759-760.)

In sum, we conclude Senate Bill 1437 does not apply to convictions for attempted murder and defendant may not seek relief by way of direct appeal.

6

B.    *Custody Credits*

Defendant also contends his custody credits were miscalculated in the trial court. Defendant was arrested on April 16, 2015, and remained in custody until July 18, 2019, when he was sentenced, for a total of 1,555 days.  The trial court, however, awarded defendant only 1,554 days of actual custody credits.  The People concede this was error and agree defendant is entitled to an additional day of custody credit.  We accept the People's concession and modify the judgment accordingly.

## DISPOSITION

The judgment is modified to include 1,788 days of custody credits (1,555 days of actual credit, 233 days of conduct credit).  The judgment is affirmed as modified.  The trial court is directed to prepare an amended abstract of judgment and deliver a certified copy of the same to the Department of Corrections and Rehabilitation.


                                                                     KRAUSE                , J.


We concur:


MAURO            , Acting P. J.


RENNER            , J.

7