Filed 10/18/23  P. v. Ramirez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEONARDO RAMIREZ, JR.,<br><br>    Defendant and Appellant. | H049145<br>(Monterey County<br> Super. Ct. No. 19CR013754) |

## I.  INTRODUCTION

Defendant Leonardo Ramirez, Jr., entered the home of a 10-year-old relative through a window and raped the child in her bed at gunpoint.  A jury convicted defendant of rape by force or fear (Pen. Code, § 261, subd. (a)(2); count 1),[1] lewd or lascivious act involving force or fear with a child (§ 288, subd. (b)(1); count 2), and sexual intercourse with a child (§ 288.7, subd. (a); count 3).  With respect to count 1, the jury found true allegations that defendant personally inflicted bodily harm on the child (§ 667.61, subds. (d)(7) & (j)(1)), that defendant committed the offense during the commission of a burglary and personally used a dangerous or deadly weapon (§ 667.61, subds. (e)(2), (3) & (j)(1)), and that defendant committed the offense against a child under the age of 14 years (§ 264, subd. (c)(1)).  With respect to count 2, the jury found true allegations

---

[1] All further statutory references are to the Penal Code.

that defendant committed the offense during the commission of a first degree burglary with intent to commit the offense against a child (§ 667.61, subds. (d)(4) & (j)(1)), that defendant committed the offense during the commission of a burglary and personally used a dangerous or deadly weapon (§ 667.61, subds. (e)(2), (3) & (j)(1)), and that defendant personally inflicted bodily harm on the child (§ 667.61, subds. (d)(7) & (j)(1)).

The trial court sentenced defendant to a term of life without the possibility of parole (LWOP) for each of counts 1 and 2, and an indeterminate term of 25 years to life for count 3. The sentences for all three counts were mandatory sentences under the "One Strike" law, section 667.61. For counts 1 and 2, the mandatory sentences were LWOP because defendant's offenses occurred under one or more of the circumstances specified in section 667.61, subdivision (d), or under two or more of the circumstances specified in section 667.61, subdivision (e). (§ 667.61, subd. (j)(1).) For count 3, the mandatory One Strike sentence was 25 years to life, because defendant committed an offense listed in section 667.61, subdivision (c), upon a victim who was a child under 14 years of age. (§ 667.61, subd. (j)(2).)

For each of counts 2 and 3, the trial court ordered: "This sentence shall be served concurrent to all counts and this sentence shall be stayed pursuant to Penal Code Section 654." The trial court also ordered defendant to pay various fines and fees, including a $10,000 restitution fine under section 1202.4, subdivision (b), and a parole revocation restitution fine under section 1202.45 in the same amount, with the latter fine suspended unless defendant's parole is revoked.

On appeal, defendant contends: (1) his case must be remanded for resentencing to determine which offenses to stay under section 654; (2) defendant's LWOP sentence constitutes cruel and/or unusual punishment in violation of the United States and California Constitutions; (3) defendant's ineligibility for youth offender parole consideration denies him his right to equal protection; (4) defendant received ineffective assistance of counsel by counsel's failure to raise the cruel and/or unusual punishment

and equal protection issues in the trial court; (5) the parole revocation restitution fine must be vacated because defendant was sentenced to an LWOP term; and (6) the matter should be remanded for an evidentiary hearing to permit defendant to present and preserve evidence pertaining to his youth at the time of the offenses.

For reasons that we will explain, we will remand for full resentencing under current law due to legislative amendments to section 654.

## II. BACKGROUND

Defendant's wife was related to the mother of a 10-year-old girl. On the morning of the charged offenses, the girl's mother had just left for work. The girl was sleeping in her bed when she felt someone pulling down her pants. She turned around and saw a man wearing a hoodie and a mask, holding what appeared to be a black handgun. The man flipped the girl over onto her stomach. The girl tried to yell for help, but the man covered her mouth with his hand and pointed the gun at her head, telling her to "shut up." Within a few minutes, the girl felt the man's penis penetrate her vagina, causing her "terrible" pain. The girl had difficulty breathing as her assailant's hand was over her mouth, but she resisted, including unsuccessfully grabbing for the handgun.

After about a minute of penetrating the girl, the man gathered his items and left. When the girl's older sister awoke about an hour later, the girl told her sister what happened. A sexual assault examination revealed dried blood around the girl's nostrils, red dots across her nose and cheek consistent with strangulation, a swollen lip with a bump on it, an abrasion in the middle of her back, and injuries to her genitalia consistent with vaginal penetration. Vulvar and vestibular swabs taken from the girl confirmed the presence of sperm cells. The examiner could not complete a full examination because the girl was in pain and began to bleed.

The girl could not identify her assailant, but she did describe his skin color, deep voice, and accent. Investigators also gathered male DNA from the sexual assault examination and observed blood stains, sperm, and seminal fluid on a blanket and pillow

3

from the girl's bed. For two years, the assailant's identity remained unknown until defendant sent a message to the girl on Snapchat to connect with her. This caused the girl to suspect that defendant was her attacker, and to report this to police. Police obtained a DNA sample from defendant, which produced a "very strong" indication of a match with the profile of the male DNA gathered from the attack. Police then interviewed defendant. After initially denying any involvement in the attack, defendant made several admissions, including that: he used a black "gas pistol" in the attack; he "abused her" including pulling down her clothing, penetrating her with his finger, and "rubbing [his] penis on her"; he told the girl to "shut up"; he held her face down and covered her mouth; and he engaged in these actions to make the girl's older sister "pay" for comments the older sister made electronically about defendant's wife.

At trial, defendant briefly testified on his own behalf. He stated that he went to the girl's house to "reprimand the attitude of a person [the girl's older sister] who was bothering me and my wife through text messages." He stated his intent was to "scare [the girl's older sister] and leave quickly." On cross-examination, defendant denied attempting to penetrate the girl, but he admitted to rubbing his penis on the girl, stating: "It was just to do a mischievous act and leave out of there quickly." Defendant testified on cross-examination that "it just occurred" to him that morning to enter the house, and when confronted with his possession of the "full mask" and "BB gun" used in the attack, he testified that he kept these items on him. Defendant also stated that upon seeing the girl, he thought she was the girl's older sister and within one second, he started pulling down her pants. Defendant testified on cross-examination that minutes after the attack started, he learned the girl was not the older sister, and he left "fast -- quickly" after that.

At sentencing, the trial court recounted the facts of the case, concluding: "The Defendant's actions in this case were absolutely abhorrent, egregious and appalling." After hearing argument in which the parties acknowledged that section 667.61 mandated defendant's sentences, the trial court pronounced the sentences. The court stated it

4

considered the general objectives of sentencing, which include the following: "[P]rotecting society, punishing the Defendant, encouraging the Defendant to lead a law-abiding life in the future, and deterring him from future offenses, deterring others from criminal conduct by demonstrating its consequences.  Preventing the Defendant from committing new crimes by isolating him for the period of incarceration.  Securing restitution for the victims of crime and achieving uniformity in sentencing."  The trial court noted that it considered the aggravating factors of infliction of great bodily injury on the child, the use of a weapon during the commission of the crime, the vulnerability of the victim, and indications of a degree of planning, along with the mitigating factors of defendant's "minimal criminal history" and age or lack of maturity.  The court determined that the aggravating factors "significantly outweigh" the mitigating factors and imposed the sentences mandated by section 667.61 for the three counts.  This appeal followed.

### III.  DISCUSSION

At the time of defendant's sentencing hearing, section 654, subdivision (a), provided in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (Former § 654, subd. (a).)  Effective January 1, 2022, section 654, subdivision (a), was amended to read in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.)  "Previously, under section 654, 'the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term. [Citation.]  . . . [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could

5

result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' [Citation.]" (*People v. Jones* (2022) 79 Cal.App.5th 37, 45.)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' [Citation.] ' "[A] court that is unaware of its discretionary authority cannot exercise its informed discretion." ' [Citation.] 'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing.' [Citation.]" (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1096–1097.) When a statute retroactively supplies a trial court with sentencing discretion, remand is required unless the record provides a "clear indicator of how the trial court would exercise its new discretion . . . ." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1033.)

Defendant contends that remand for resentencing is necessary because amendments to section 654 that became effective after his sentencing hearing provide the trial court with discretion as to which counts to stay. He asserts that the record does not clearly indicate that the court would not have stayed the LWOP sentences in favor of the 25-years-to-life sentence on count 3 if the trial court had been aware of the discretion the Legislature later granted it, and thus remand is required.

In response, the Attorney General conceded that remand is required because the amendments to section 654 are ameliorative changes that apply retroactively to defendant's nonfinal judgment under *In re Estrada* (1965) 63 Cal.2d 740. The Attorney General also conceded at oral argument that remand for full resentencing is required under amended section 654.[2]

---

[2] The Attorney General initially asserted in briefing that remand is unnecessary because the sentences required under the One Strike law are mandatory and not subject to stays under section 654.

6

We agree with the parties that the recent amendments to section 654 apply retroactively to defendant's judgment. (*People v. Fugit* (2023) 88 Cal.App.5th 981, 995–996; *People v. Sek* (2022) 74 Cal.App.5th 657, 673; *People v. Mani* (2022) 74 Cal.App.5th 343, 379–380.) We also accept the Attorney General's concession that remand for full resentencing under current law is required. "[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant. [Citations.]" (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425.) This disposition means we need not address defendant's remaining contentions, which he may elect to raise in the trial court in the first instance at resentencing.

## IV.  DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for full resentencing under current law.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*People v. Ramirez*
**H049145**